# Hunter v. The State.

*Indictment for Grand Larceny.*

1. *Evidence; when acts and declarations of a co-conspirator admissible.* In a criminal case, the acts and declarations of another person than defendant, in the absence of the defendant, are admissible in evidence against the defendant, when there has been introduced evidence, direct or circumstantial, *prima facie* sufficient to establish the existence of a conspiracy between the defendant and such other person to commit the offense charged, and such acts and declarations are in furtherance of the common design to commit the crime.

APPEAL from the Criminal Court of Jefferson.

Tried before the Hon. SAMUEL E. GREENE.

The appellant was indicted, tried and convicted of grand larceny, in feloniously taking and carrying away money to the amount of fifty dollars, the personal property of one John Murray.

The indictment under which the defendant was convicted was preferred against Charlie Cole, Obe Lovelace and the appellant, Anderson Hunter. A severance having been granted on motion of Anderson Hunter, he was tried alone.

The State introduced John Murray, who testified that he lived near and worked in one of the coal mines, located a few miles from Birmingham, and that on Monday, January 20th, 1896, about 10 o'clock in the morning, he came to Birmingham, Jefferson county ; that he did some trading in a store, and that Obe Lovelace, one of the defendants not on trial, was present when he had a $20 bill changed, and tried to sell him a watch ; that he

left the store and Lovelace followed him; that he was about to get on a dummy when Lovelace appoached him again and said he was getting up hands for the Sloss Iron and Steel Company and said he wanted to engage Murray in that capacity for said company; that he, Murray, replied he was going to Woodlawn (a suburb of Birmingham about four miles distant by dummy), and Lovelace said he was going there too; that they then walked up the street together and that Lovelace "treated" to cigars and drinks, and said the Sloss company furnished him money to treat on; that they took a good many drinks and cigars together, and that each time Lovelace insisted on Murray's drinking; that they were together until 12 o'clock; that he, Murray, was considerably under the influence of the intoxicating drinks he had taken, but not too drunk to know what he was about; that Obe Lovelace tried to make him drunk on mean whiskey, and that he did take several drinks of beer and whiskey, and that not long after 12 o'clock they went to a house on 22d street and 2d avenue in Birmingham, Jefferson county, where defendant lived. To each and every question of solicitor to the witness, regarding the acts and declarations of Obe Lovelace, up to the time they arrived at the house of the defendant and were with the defendant, the defendant objected, upon the grounds that any act or declaration made by another out of the presence of, and without the knowledge of, the defendant were not competent evidence against him. The court overruled each of these objections, and permitted the witness to answer the questions, to each of which rulings of the court the defendant separately excepted.

The witness Murray further testified that when he and the said Obe Lovelace reached the house of the defendant and went in, a colored woman gave them chairs; that Lovelace went into another room of the house, and that soon thereafter he and the defendant, Anderson Hunter, came in the room where the witness Murray was, and they all three sat down; that thereupon Lovelace tried to get Murray to bet on a trick which the defendant was playing, and upon his refusal to do so, Lovelace pretended to bet; that during the betting Lovelace asked the witness Murray to change a twenty dollar bill of the defendant, in which he had won an interest; that Murray pulled out

[Hunter v. The State.]

a roll of money amounting to fifty dollars, for the purpose of getting the change, and upon his putting it upon the corner of the table, the defendant snatched it up and ran out of the back door, leaving the witness and Lovelace in the room, and that he, the witness, had not received any of the money since.

The testimony for the defendant tended to show that the witness Murray who was the prosecutor in this case, lost his money in a game of craps, which Murray, Lovelace and the defendant played at the defendant's house, but that the amount which Murray lost was not so large as that testified to by him.

Upon the introduction of all the evidence, the court among other things, instructed the jury, "The acts and declarations of Obe Lovelace out of the presence of the defendant could not be considered by the jury, unless the jury found beyond a reasonable doubt that there was a conspiracy between Obe Lovelace and the defendant to commit the crime charged against the defendant, and that these acts and declarations of Obe Lovelace out of the defendant's presence were in furtherance of a common design to commit the crime." To the giving of this instruction by the court the defendant duly excepted. The defendant was convicted of the offense charged in the indictment, and from the judgment of conviction the present appeal is prosecuted.

No counsel marked as appearing for appellant.

WILLIAM C. FITTS, Attorney-General for the State, cited *Tanner v. State,* 92 Ala. 1; *Jolly v. State,* 94 Ala. 19; *Roland v. State,* 105 Ala. 41.

BRICKELL, C. J.—The declarations of Lovelace to the prosecutor made in the absence of the defendant, were of course inadmissible except upon the theory of the existence of a conspiracy between the defendant and Lovelace. The principle upon which such declarations are admitted is, that the conspirators, by the act of conspiring, "have jointly assumed to themselves the attribute of individuality so far as regards the prosecution of tha common design; thus rendering whatever is said or done by any one in furtherance of that design, a part of the *res gestæ,* and therefore the act of all."—3 Greenleaf

on Ev., § 94. It is necessary, before such evidence can be admitted, that a foundation should be laid by proof addressed to the court, *prima facie* sufficient to establish the existence of such a conspiracy.—*McAnally v. State*, 74 Ala. 9. But such evidence will generally, from the nature of the case, be circumstantial.—3 Greenleaf on Ev., § 96.

Applying these principles to the evidence, we are of opinion the court properly admitted the declarations made by Lovelace to the prosecutor. True, there was no direct evidence of a previous conspiracy, but there was circumstantial evidence of sufficient weight to authorize the submission of the question to the jury upon whom the duty rests of ultimately determining the common guilt.—*McAnally v. State, supra*. Lovelace does not appear to have been a stranger at the house of the defendant. He was not only admitted without question, but proceeded immediately to an inner room, where he met defendant. He made no inquiry whether defendant was at home; he seems to have known this. If the prosecutor is to be believed, the defendant was evidently prepared in advance, to carry out the common design; for he at once appears with his gaming appliances. We need not consider the evidence in the further development of the scheme, except to mention as the logical result, that the prosecutor's money was taken away from him. On this state of the evidence, it might very well have been found that the enterprise was a joint one.

Affirmed.