# Gibson *v.* The State.

*Murder.*

(Decided June 30, 1915.  69 South. 533.)

1. *Arrest; What Constitutes.*—Bare words are not sufficient to constitute an arrest where the party sought to be arrested resists and refuses to be arrested.

2. *Homicide; Evidence.*—Where evidence has been introduced tending to show that defendant was a deputy marshal, and had gone to the place of the homicide for the express purpose of killing the deceased, it was competent for defendant to show that he and the marshal had been to such place earlier, that the marshal had instructed him to go back, and that when he went back he was sent for by someone who informed him that gambling and fighting were going on at the house where the homicide was committed.

3. *Same; Dying Declaration.*—Where it was shown that deceased realized his condition and said he was going to die, that he was en-

tirely conscious, and affixed his signature to the statement he made, such statement was admissible as a dying declaration.

4. *Trial; Argument of Counsel.*—Where counsel for the state in his argument intimated that defendant had admitted that defendant went to the place of the homicide with the express purpose of killing deceased, and had done so, such statement was prejudicial error where not borne out by the evidence.

APPEAL from Geneva Circuit Court.

Heard before Hon. H. A. PEARCE.

Bill Gibson was convicted of murder in the second degree, and he appeals. Reversed and remanded.

In his argument to the jury, the solicitor said: "I understood, and no doubt the jury did, that what the witness Simmons said about what the defendant said that the defendant had done what he came there to do."

C. D. CARMICHAEL, and B. G. FARMER, for appellant.

WILLIAM L. MARTIN, Attorney General, and J. P. MUDD, Assistant Attorney General, for the State.

GARDNER, J.—Appellant was tried for the murder of one Ock Austin upon an indictment charging murder in the first degree, and was convicted of murder in the second degree and sentenced to the penitentiary for a period of 25 years. The defendant shot and killed said Austin in the town of Coffee Springs on a Saturday night in September, 1914. The deceased, a white man, was at the time of the shooting at a negro house, with one or two other white men, attending what is referred to in the record as a "negro frolic." Testimony for the state would tend to show an unprovoked murder by defendant, as witnesses for the state testified that the defendant shot the deceased three times while deceased was unarmed and making no effort whatever to assault defendant in any manner. The theory of the defendant is, however, that he acted en-

tirely in self-defense, and claims that he did not shoot or offer to shoot the deceased until the latter had actually fired twice at close range with his pistol. The evidence, therefore, is shown to be in sharp conflict; and this, of course, has reference as to who was the aggressor and who was at fault.

The evidence shows without conflict that one Windham was marshal of the town of Coffee Springs at that time, but that under his authority the defendant was acting as marshal on the night in question, and that he had for a period of six weeks prior thereto served as such deputy marshal for said town. His authority as such officer is not questioned upon this appeal.—29 Cyc. 1395; *Martin v. State*, 89 Ala. 115, 8 South. 23, 18 Am. St. Rep. 91; *Merlette v. State*, 100 Ala. 42, 14 South. 562; Code 1907, § 6267; *Herring v. Lee*, 22 W. Va. 661; Throop, Public Officers, 536..

There was proof offered by the state which had a tendency to show that the defendant went down to this house on this occasion "to get" deceased—to use the language of a witness—and, indeed, the dying declaration of deceased, offered in evidence by the state, tends to show malice on the part of defendant, and that he went to this house to kill the deceased. In short, there is evidence from which the jury could infer that the defendant went to this house on this occasion for the unlawful purpose of killing the deceased, and not from any lawful or proper motive. There was, therefore, sufficient evidence from which the jury could infer that, although the defendant was acting as marshal at the time, yet he did not go to the house on this occasion for any lawful purpose, or in the discharge of any of his duties as such officer, but merely to use the office as a shield and excuse for his sinister purpose of kill-

[Gibson v. The State.]

ing the deceased. The argument of counsel for the state, to which objection was made, and which is hereinafter referred to, indicates that this was the insistence urged on the trial of defendant before the jury. Defendant offered to prove by Windham, the marshal; that both had been down to this negro frolic earlier in the evening, and that some arrests were made, and that upon leaving there Windham went home and instructed this defendant to go back down there that night. Defendant further offered to show that while he was up town one Johnson, who had come from this frolic, informed him that they were gambling and fighting down at this house, and thereupon he went down to the house, and while testifying for himself defendant offered to show that he only went back after being sent for and informed as above stated.

Defendant, however, was not permitted by the court to offer such proof. His testimony tends to show that he went to the negro house in company with H. C. and C. C. Whaley in a buggy; that when he reached the yard and had gotten out of the buggy a pistol was fired in the south room of the house, and defendant requested the Whaley boys to go into the house with him; that he walked to the door and opened it, saying, "You all consider yourselves under arrest;" that he went no further than the door; that there were a dozen or 15 men in the room, and that when he made the above remark the deceased cursed him, to which the defendant replied that there was no use to have trouble, but for him to "go up and see Mr. Windham;" that deceased had some cards in his right hand, and reached in his side pocket, and, drawing out his pistol, fired two shots at defendant, standing a few feet in front of him and advancing a couple of steps, whereupon the defendant

pulled his pistol and fired three shots in rapid succession. Defendant further testified that there had been no ill feeling between himself and deceased.

It is apparent from the record, and was conceded in briefs of counsel in this cause, that the question of self-defense was one of prime importance upon the trial, including, of course, also the question as to who was the aggressor, and what motive prompted the respective parties. There was evidence tending to show that deceased on this occasion was drunk. Some of the witnesses placed the hour of the shooting at 12 o'clock or later. In view of the tendency of evidence for the state, and the insistence of counsel as above indicated as to the motive which prompted defendant to go to this house on the occasion in question, it was highly important for him to rebut by competent evidence such inference of unlawful motive, and to show that he was present solely to discharge what he conceived to be his duty as deputy marshal. It is well settled that an officer is not authorized to make an arrest for a misdemeanor not committed in his presence without a warrant.— Code 1907, § 6269; *Sanders v. State,* 181 Ala. 35, 61 South. 336; *Cunningham v. Baker,* 104 Ala. 160, 16 South. 68, 53 Am. St. Rep. 27; *Adams v. State,* 175 Ala. 8; *Jones v. State,* 100 Ala. 88, 14 South. 772; *Holland v. State,* 162 Ala. 5, 50 South. 215. In *Sanders v. State, supra,* it is said: " 'An officer cannot justify an arrest upon the ground that he had reasonable cause to believe the person arrested had committed a felony, unless he has information of facts, derived from those reasonably presumed to know them, which, if submitted to a judge or magistrate having jurisdiction, would require the issue of a warrant of arrest and the holding of the accused to await further examination.' [*Mat-*

*colmson v. Scott*] 56 Mich. 459, 26 N. W. 166. This same doctrine was again announced in the recent case of *Swell v. Derricott,* 161 Ala. 274, 49 South. 901 [23 L. R. A. (N. S.) 996, 18 Ann. Cas. 636], where it is said: 'As a general rule, at common law an arrest could not be made without a warrant, but if the felony or breach of the peace threatened or committed within the view of an officer authorized an arrest, it was his duty to arrest without warrant, or, if a felony had been committed, and there was probable cause to believe that the particular person was the offender, he could be arrested without a warrant; but the matter of arrest is now in this state largely the subject of statutory regulation, which in some degree is an affirmation of the rules at common law. Of course, an officer or a private citizen, under the statute, cannot justify an arrest upon the ground that he had reasonable cause to believe the person arrested had committed a felony, unless he has information of facts, derived from credible sources, or from persons reasonably presumed to know them, which, if submitted to the judge or the magistrate having jurisdiction, would require the issue of a warrant of arrest.—*Cunningham v. Baker,* 104 Ala. 171, 16 South. 68 [53 Am. St. Rep. 27]."

In *Findlay v. Pruitt,* 9 Port. 195, it is said: "It is true that an arrest may be justified, where there is a well grounded belief, founded on pregnant circumstances, that a felony has been committed; but mere suspicion will not afford a justification."

In 3 Cyc. 887, which cites *Findlay v. Pruitt, supra,* in the notes, it is said: "The reasonable and proper grounds that will justify an officer in arresting, without a warrant, one whom he suspects of felony, must be such as would actuate a reasonable man, acting in

good faith. The necessary elements of the grounds of suspicion are that the officer acts upon a belief in the person's guilt, based either upon facts or circumstances within the officer's own knowledge, or upon information imparted to him by reliable and credible third persons."

In the case of *Hayes v. Mitchell,* 80 Ala. 183, speaking to the question of the right of an officer to act upon the reasonable appearance of things, this court, through Chief Justice Stone, said: "Part of the testimony tended to show that, on the day in question, there was drunkenness, noise and riotous conduct on the streets of Oxford. If this was believed, it afforded a good reason why the marshal should have been on the streets, ready to exercise his functions, if needed, and untrammeled by any incumbrance. And it was not necessary that the danger should be real. Reasonable ground for apprehending that there would or might be a breach or disturbance of the peace would make it his duty to be present, that he might prevent violations of the law. Apparent necessity, on a reasonable survey of the surroundings, is, as an excuse, as valid as if it were real. Preventive measures, to be effective, must be taken on the reasonable appearance of things. It is too late after the mischief is accomplished."

The above case is found cited in an interesting note to the case of *Leger v. Warren,* 51 L. R. A. 193. The following cases are also of interest in this connection: *Hawkins v. Lutton,* 95 Wis. 492, 70 N. W. 483, 60 Am. St. Rep. 131; *Stoehr v. Payne,* 132 La. 213, 61 South. 206, 44 L. R. A. (N. S.) 604; *State v. McAfee,* 107 N. C. 812, 12 S. E. 435, 10 L. R. A. 607. In *Hayes v. Mitchell,* 69 Ala. 452, it was said: "Two great and vital principles of government are to be kept steadily in view, in pronouncing on conduct such as is brought to view

in this record—the liberty of a citizen, and the peace and repose of society. Civil liberty is natural liberty, shorn of the excesses which invade and trench on the equal liberty of others. No one can claim the right to violate the law, and precautionary force is justified, to prevent a greater impending evil. Such force, however, is in its nature remedial, and can be carried no farther  than is reasonably necessary to  prevent the threatened wrong. Prevention is less hurtful than redress, and, when prudently exercised, is not only justified, but is commended of the law. No man can rightfully complain of any encroachment upon personal liberty, which he himself by his lawlessness or violence has rendered necessary for the safety and protection of others. It is liberty as defined by law, not unbridled license, our free Constitution guarantees to every man —the humblest, equally with the most exalted."

(1) There was in this case no arrest effected. As has been said by this court, bare words will not make an arrest, if the party resists and refuses to be arrested. —*Dougherty v. State,* 106 Ala. 63, 17 South. 393. Indeed, it may be doubted (though a question not necessary to be decided) that what was done amounted to an attempt to arrest, but rather merely evincing a purpose to do so; for, to take the theory of the defendant, as soon as he spoke the words, and while he was standing in the door, he was cursed and fired upon by the deceased, and, upon the theory of the state, as soon as defendant opened the door he immediately began firing upon the deceased. While the above-cited authorities, therefore, cannot be said to be directly in point so far as the question of arrest is concerned, they do tend to shed light upon the question as to whether or not the defendant was rightfully at the place on this occasion.

(2) As previously stated, there was evidence tending to show that the deceased was drunk, that he had a pistol, and at least one of the negroes also had a pistol, and that when defendant reached the house a pistol was fired in the south room thereof, whereupon he entered. As acting or deputy marshal of the town he was a conservator of the peace, and it was his duty to prevent a breach of the peace, actual or threatened, in his presence. He had the right as an officer to act upon reasonable cause for belief that a felony had been committed. Under such circumstances, therefore, the jury had a right to infer, if they so believed, that the defendant was not a trespasser in entering the door on that occasion. We are of opinion that, to rebut the inference which the jury might draw from the evidence offered by the state, the defendant had a right to show that he and the marshal had been to this house earlier in the night, that the marshal had instructed him to go back during the night, and that at the time he went down Johnson had come for him, informing him that they were gambling and fighting at this place. Such evidence tended to explain defendant's presence there, and to show that his motive was not a wrongful one, as contended by the state. We therefore conclude that the trial court committed error, which must reverse this cause, in sustaining the objection of the state to this testimony.—*Pearce v. State,* 4 Ala. App. 32, 58 South. 996; *Gafford v. State,* 122 Ala. 54, 62, 25 South. 10; *Ezell v. State,* 68 South. 578; *Lewis v. State,* 178 Ala. 26, 59 South. 577; *Johnson v. State,* 102 Ala. 1, 16 South. 99.

(3) The assertion made by counsel for the state as to the testimony of the witness Simmons does not seem to be borne out by the evidence as disclosed by the record. That it was highly prejudicial cannot be question-

ed, and it should have been excluded upon motion of the defendant. As to whether or not the error was cured by the remarks of the court to the jury that they were the ones to try the facts we need not decide, as the cause must be reversed for the error above indicated, and the question need not and doubtless will not arise upon another trial.—*Birmingham Co. v. Gonzalez*, 183 Ala. 273, 61 South. 80; *Cross v. State.* 68 Ala. 476.

(4) Deceased was shot in three places; one bullet entering the breast, and the others the right and left side of the body. From the time he was wounded deceased was in a precarious condition, and died some 14 hours later. He gave a short statement, which is offered in evidence as his dying declaration. The testimony of the witness Baxley, to whom the statement was made, shows that deceased realized his condition and said he was going to die; that he was entirely conscious, and affixed his signature to the statement made. The said statement was therefore admissible as his dying declaration.—*Carmichael v. State,* in ms.

We can see no necessity for a treatment of the refused charges. Several of them relate to the guilt of the defendant of murder in the first degree, while he was convicted of murder in the second degree, and the others need not be considered, as, under the ruling here, additional evidence will be admitted upon the next trial. For the error indicated, as to the admissibility of testimony offered by the defendant, the judgment of the court below is reversed, and the cause remanded. The defendant will remain in custody until discharged by due course of law.

Reversed and remanded.

ANDERSON, C. J., and MCCLELLAN and SAYRE, JJ., concur.