**DURDEN v. STATE.**    (4 Div. 761.)*

(Court of Appeals of Alabama. April 11, 1922. Rehearing Denied May 9, 1922.)

**1. Courts ⬤⟲91(1)—Court of Appeals bound by Supreme Court ruling.**

The Court of Appeals is bound by ruling of the Supreme Court as to questioning legality of grand jury by plea in abatement to indictment.

**2. Witnesses ⬤⟲286(4)—Testimony on redirect examination held competent, in view of testimony on cross-examination.**

Testimony sought to be elicited on redirect examination of state's witness, on prosecution for homicide, claimed to have been pursuant to conspiracy by question, "Was there anything said there in the presence of defendant with reference to * * * (deceased) being a negro?" held competent, in view of witness on cross-examination having detailed what had been said and done there, when defendant and others came up and testified that he had word "from defendant that the man he wanted stopped was a yellow negro, and I took deceased to be a yellow negro, * * * and stopped him."

---

⬤⟲For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
[1] Ante, p. 167.     *Certiorari denied 93 South. 922.

3. **Criminal law ⊚⟶427(5)—Acts and declarations of coconspirators out of defendant's presence admissible, where conspiracy is shown prima facie.**

A foundation must be laid by proof prima facie sufficient to establish existence of a conspiracy to murder, before acts and declarations of defendant's coconspirators in furtherance of the common design, though out of his presence, are admissible against him.

4. **Criminal law ⊚⟶427(5)—Conspiracy provable by circumstances.**

Conspiracy may be proved by circumstances.

5. **Criminal law ⊚⟶424(5)—Subsequent acts and declarations of coconspirators admissible if part of res gestæ.**

Acts and declarations of conspirators after the common purpose has been accomplished are inadmissible against a coconspirator, except when so intimately related in time and occasion to the major fact as to constitute part of the res gestæ.

6. **Criminal law ⊚⟶1141(2), 1144(12)—Appellant must show declarations admitted were not part of res gestæ.**

Appellant has the burden of showing error, and admission of declarations of coconspirator will not be held error; it not appearing that they were so far removed from the major fact as not to be part of the res gestæ.

7. **Criminal law ⊚⟶829(1)—Giving requested charges covered by others given not necessary.**

It is enough that requested charges refused were fairly and substantially covered by the oral charge and other requested charges given.

8. **Homicide ⊚⟶30(1)—Law as to aider and abettor not correctly stated by requested charge.**

The law *held* not correctly stated by requested charge that defendant may not be found guilty as an aider or abettor of the killing if he gave no assistance and uttered no words to those doing the killing, if he was not present by preconcert, with knowledge of those doing the killing, with intent to aid them, unless he actually took part in the killing.

9. **Homicide ⊚⟶30(1)—Requested charge as to presence with intent, in absence of conspiracy or aiding and abetting bad.**

The law *held* not correctly stated by requested charge that, unless the jury believe that defendant conspired to take the life of or do bodily harm to deceased, or aided and abetted in the killing, verdict should be not guilty, though the jury believe he was present at the killing with intent or purpose to assist or aid therein if necessary.

10. **Homicide ⊚⟶30(1)—Requested instruction as to necessity of act of defendant in the common design encouraging others bad.**

The law *held* not correctly stated by requested charge that the jury must believe that defendant's act in going to the mill in a car with deceased and others in the common design to kill deceased must have resulted in encouraging, instigating, inciting, advising, or counseling some of the others in the common design to kill deceased, before this act can operate to defendant's prejudice.

11. **Criminal law ⊚⟶59(2)—Requested charge as to principals in different degrees bad, in view of their abolishment by statute.**

Requested charge as to principals in the first and second degree *held* properly refused, in view of Code 1907, § 6219, abolishing in cases of felony the distinction between accessory before the fact and principal and between principals in the first and second degree, and making punishable as principals all concerned in the commission of the felony, whether directly committing the act constituting it, or aiding or abetting in its commission.

12. **Criminal law ⊚⟶811(1)—Requested charge bad, as singling out part of evidence.**

Requested charges in a homicide case *held* properly refused, as singling out part of the testimony.

13. **Homicide ⊚⟶30(1)—Requested charge as to going with others without prior conspiracy, though secretly approving of their intended act, bad.**

The law *held* incorrectly stated by requested charge that if defendant rode to a mill with deceased and others without any prior conspiracy, though he knew of a purpose and intent of some of the others to kill deceased, and approved of its commission, he cannot be convicted, unless his approval was communicated to those who did the killing.

14. **Homicide ⊚⟶30(1)—Requested charge as to necessity of defendant's act encouraging others bad.**

The law *held* incorrectly stated by requested charge that, if defendant's act in riding to a mill with deceased and others was all there was to connect him with the common design to kill deceased, before the jury can convict they must be satisfied that this act encouraged, aided, or abetted some of those engaged in such design.

15. **Homicide ⊚⟶305—Requested charge on accessory before the fact unintelligible.**

Requested charge in a murder prosecution defining an accessory before the fact *held* unintelligible.

16. **Homicide ⊚⟶305—Requested charge as to going with others without knowing of common design confusing and misleading.**

Requested charge that the gravamen of the offense charged is the intent to murder W., and if the jury believe that defendant, when he rode with W. and others to the mill, did not know of any common design or purpose to kill W., or other unlawful assault on him, they must acquit, *held* confusing and misleading.

17. **Homicide ⊚⟶300(5)—Requested charge as to abandoning common design argumentative and misleading.**

Requested charge that if the jury believe that defendant, when he reached the mill with

deceased and the others, abandoned any purpose or common design to assault or kill, and his associates were notified of his withdrawal by his leaving the mill and not going down in the swamp at the scene of the killing, they cannot convict, though they believe defendant had previously conspired with the others to kill deceased, *held* argumentative and misleading.

**18. Homicide ⬡➾30(1)—Requested charge bad in requiring proof of conspiracy between defendant and the others indicted with him.**

Requested charge that the jury cannot convict unless they believe there was a conspiracy between defendant and the others jointly indicted with him to kill deceased before deceased was carried down into the swamp *held* faulty, in binding the state to proof of a conspiracy by defendant and "the other defendants jointly indicted with him."

**19. Homicide ⬡➾309(3)—In absence of evidence of manslaughter, instruction thereon not required.**

Requested charge on manslaughter is properly refused, in the absence of evidence tending to show the killing was under circumstances making the offense manslaughter.

**20. Criminal law ⬡➾753(1) — Affirmative charge properly refused on conflicting evidence.**

The evidence being in conflict, the affirmative charge is properly refused.

**21. Criminal law ⬡➾995(2)—"Guity" in judgment entry clerical error and self-correcting.**

The word "guity" in the judgment entry can have no other meaning than the word guilty in the verdict, and its use is a clerical error and self-correcting.

**22. Criminal law ⬡➾995(2)—Judgment held a sufficient adjudication of guilt.**

The judgment, which after reciting the verdict states that it is "considered and adjudged that defendant is guilty as found by the jury," is a sufficient adjudication of guilt.

Appeal from Circuit Court, Geneva County; H. A. Pearce, Judge.

Lige Durden, alias Elijah Durden, and others, were indicted for murder in the first degree, and upon severance and separate trial said Durden was convicted of murder in the second degree, and appeals. Affirmed.

The exceptions to evidence sufficiently appear from the opinion.

The following charges were refused to the defendant:

(1) "I charge you that you cannot find this defendant guilty as an aider or abettor of the killing of Alto Windham, if he gave no assistance, and uttered no words to the person or persons doing the killing, if the defendant was not present by preconcert, special or general, in person, with the knowledge of the persons doing the killing, with the intent to aid them, unless he actually took part in the killing itself."

(2) "A principal in the first degree is one whose unlawful acts or omissions caused the death of the victim without the intervention of any responsible agent, and you cannot convict the defendant Lige Durden under the evidence in this case of being a principal in the first degree."

(3) "The jury cannot convict the defendant of being a principal in the first degree in or about the killing of the deceased."

(4) "A principal in the second degree is one who was actually or constructively present at the scene of the crime, aiding or abetting therein, but not directly causing the death."

(5) "The jury cannot convict this defendant of actually or constructively being present at the scene of the killing of Alto Windham, aiding or abetting therein, and hence the jury cannot convict the defendant under the evidence in this case of being a principal in the second degree."

(6) "The jury cannot convict this defendant under the evidence in this case of being a principal in the second degree for the killing of Alto Windham, the deceased."

(7) "The jury under the evidence in this case must acquit the defendant of being a principal in the first or a principal of the second degree in the killing of Alto Windham."

(8) "An accessory before the fact is one who has conspired with the actual perpetrator to convict the homicide, or some other unlawful act that would naturally in a homicide, or who have procured, instigated, encouraged, or advised him to commit it, but who was neither actually nor constructively present when it was committed."

(9) "Unless you believe from the evidence beyond all reasonable doubt and to a moral certainty that the defendant Lige Durden entered into a conspiracy to take the life of or do bodily harm to Alto Windham, the deceased, or that he aided and abetted in the killing of Alto Windham, then your verdict should be not guilty, although you believe from the evidence that he was present at the time and place of the killing, with the intent or purpose in his mind to assist or aid in the killing if the necessity arose."

(12) "If you believe from the evidence in this case that the defendant went to the sawmill on the car with Dan Whitehead, the deceased, and others, without any prior conspiracy, although you believe from the evidence that the defendant had knowledge of a purpose and intent on the part of the others to kill Alto Windham, and even that the defendant approved of its commission, yet you cannot convict the defendant in this case unless you further believe from the evidence that such approval of the defendant was communicated to the persons who actually killed Alto Windham."

(13) "If you believe from the evidence in this case that the act of the defendant in going to the sawmill in the car with deceased and others is all the evidence to connect the defendant with the common design, then you must be satisfied beyond a reasonable doubt that this act or acts encouraged, aided, or abetted some of those engaged in the common design to kill

⬡➾For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Alto Windham, before you can find the defendant guilty as charged."

(14) "You must believe beyond all reasonable doubt that the act or acts of the defendant in going to the sawmill in the car with the deceased and some of the others in the common design to kill the deceased, if you find there was such common design to kill the deceased, must have resulted in encouraging, instigating, inciting, advising, or counseling some of said persons in the common design to kill the deceased before these acts can operate to the prejudice of the defendant in this case."

(15) "The gravamen of the offense charged is the 'intent to murder Alto Windham,' and if the jury believe from the evidence that the defendant at the time he went in the automobile with the deceased and others to the sawmill did not know of any common design or purpose to kill Alto Windham, or other unlawful assault on him, then you must find the defendant not guilty."

(16) "If you believe from the evidence in this case that the defendant Durden, when he reached the sawmill with the deceased and the others in the automobile, abandoned any purpose or common design to assault or kill Alto Windham, and his associates were notified of his withdrawal by his leaving the mill or millyard and not going down in the swamp at the scene of the killing, then you cannot convict the defendant, although you may further believe from the evidence that the defendant had previously conspired with the others to kill the deceased, Alto Windham."

(D) "Unless the jury believe from the evidence beyond all reasonable doubt that there was a conspiracy between the defendant Durden and the other defendants jointly indicted with him to kill, greatly injure, the deceased, before the deceased was carried down into the swamp away from the mill, or millyard, you cannot convict the defendant."

(24) Defining manslaughter in the first degree, and directing a finding of guilt in that degree if the jury believed it justified by the evidence.

Farmer, Merrill & Farmer, of Dothan, for appellant.

Counsel discuss at length and with citation of authorities the decision in Babe Whitehead v. State relative to the grand jury, with the insistence that this case should not be allowed to stand, but in view of the opinion it is not deemed necessary to here set it out. They insist for error in the admission and exclusion of evidence and cite 77 South. 979; 113 Ala. 102, 21 South. 404. They also discuss other matters alleged for error, but cite no further authority.

Harwell G. Davis, Atty. Gen., for the State.

Brief of counsel did not reach the Reporter.

MERRITT, J. The defendant was indicted for murder in the first degree, convicted for murder in the second degree, and sentenced to the penitentiary for a term of 15 years.

[1] No matter what our opinion may be, in reference to the legality of the grand jury that found and returned the indictment against the defendant, and whether the defendant can here raise these questions by plea in abatement, we are precluded from a consideration thereof by the decision of the Supreme Court in the case of Babe Whitehead v. State, 90 South. 351.[1] This court is bound by the ruling of the Supreme Court.

[2] The defendant complains at the ruling of the trial court in permitting the state to ask the state's witness Collins on redirect examination the following question:

"Was there anything said there in the presence of the defendant with reference to this man [deceased] being a negro or white man, or being kin to anybody?"

On cross-examination of this witness, he had detailed what had been said and done there, when the defendant and others had come up, and that he had word "from defendant that the man he wanted stopped was a yellow negro, and I took deceased to be a yellow negro at the time and stopped him." In the light of what the defendant had brought out on cross-examination this testimony was competent, moreover, it was clearly a part of the res gestæ.

[3] Some eight or nine persons were jointly indicted for the killing of deceased, among them being the defendant, Dan Whitehead, Babe Whitehead, and others. The state insisted that the defendants formed a mob, and that, while some did the actual shooting, the killing was the result of a conspiracy entered into by the defendant and the parties that did the shooting to take the life of the deceased, or that the defendant either aided, abetted, encouraged, invited, or furthered the enterprise, that is the killing of the deceased, either by words, acts, or by conduct on his part, of such a nature or character as was calculated to and intended to bring about, or cause the procurement of the death of deceased. There was evidence offered by the state tending to show this was true. It was therefore competent, as tending to bear out the state's contentions of such a common design, for the state to show what was said by Dan Whitehead to the deceased, at the house of Collins on the afternoon of the day that deceased was killed. These sayings, separate and apart, might seem immaterial and unimportant, but as circumstances taken together they may have been indicative of the alleged plan of the defendant to take the life of deceased, and the fact that they were not uttered in the presence of the defendant did not necessarily make them objectionable. What was said and done among themselves, among the alleged coconspirators, is just as binding on the defendant as if he had been present and agreed thereto, if it was done or said in

[1] 206 Ala. 288.

keeping with a previous agreement or common design. Toliver v. State, 142 Ala. 3, 38 South. 801.

There are numerous objections in the record to the introduction of statements made and things done by other members of the alleged mob, and these objections are predicated on the proposition that they are illegal, because not made in the presence of this defendant. These declarations and acts were of course inadmissible, except upon the theory of the existence of a conspiracy between the parties. The principle upon which such declarations are admitted is that the conspirators by the act of conspiring "have jointly assumed to themselves the attribute of individuality so far as regards the prosecution of the common design, thus rendering whatever is said or done by any one in furtherance of that design a part of the res gestæ, and therefore the act of all." Of course it is necessary before such evidence can be admitted that a foundation should be laid by proof, prima facie sufficient to establish the existence of such a conspiracy. Hunter v. State, 112 Ala. 77, 21 South. 65; McAnally v. State, 74 Ala. 9; Bonner v. State, 107 Ala. 97, 18 South. 226; Hudson v. State, 137 Ala. 64, 34 South. 854; Thomas v. State, 133 Ala. 139, 32 South. 250; Crittenden v. State, 134 Ala. 145, 32 South. 273; Collins v. State, 138 Ala. 57, 34 South. 993; Matthews v. State, 16 Ala. App. 514, 79 South. 507.

[4] A community of purpose or conspiracy is rarely proven by positive, direct testimony; it is usually by circumstances. Morris v. State, 146 Ala. 66, 41 South. 274; Ferguson v. State, 149 Ala. 21, 43 South. 16.

[5] The witness Brooks, after giving the details of the killing of deceased by members of the alleged mob, was then asked by the solicitor this question, "After the shooting, was anything said?" The defendant objected to the question, which was overruled by the court, and the witness answered, "One of them said, 'There ain't no one knows anything about it,'" and the witness further answered, "One of them made the remark and said, 'That is the third son of a bitch that he had helped put out.'" Motion was made to exclude the answers, and overruled. In this ruling there was no reversible error.

It is true that after the common purpose has been accomplished, the subsequent acts of the accomplice are not admissible as evidence of the defendant's guilt (Everage v. State, 113 Ala. 102, 21 South. 404; Lowman v. State, 161 Ala. 47, 50 South. 43), unless these acts are so intimately related in time and occasion to the major fact as to constitute a part of the one occurrence, in which event they are admissible as of the res gestæ. Newsom v. State, 15 Ala. App. 43, 72 South. 579.

[6] On appeal the burden is in all cases upon him who seeks the reversal of a judgment to show that the trial court committed error. Jackson v. State, 5 Ala. App. 306, 57 South. 594; Noel v. State, 161 Ala. 25, 49 South. 824.

It not appearing, therefore, that the declarations objected to were so far removed as not to constitute them a part of the killing, the trial court will not be put in error for overruling the defendant's objection.

[7] There was no reversible error in the refusal of the written charges requested by the defendant. Where they state correct propositions of law, they were fairly and substantially covered by the court's oral charge and the 23 written charges given at the request of the defendant.

[8-10] Refused charges 1, 9, and 14 do not correctly state the law.

[11] Refused charges 2, 3, 4, 5, 6, and 7 were properly refused.

"The distinction between an accessory before the fact and a principal, and between principals in the first and second degree, in cases of felony, is abolished; and all persons concerned in the commission of a felony, whether they directly commit the act constituting the offense, or aid or abet in its commission, * * * must hereafter be indicted, tried, and punished as principals, as in the case of misdemeanors." Section 6219, Code.

[12-14] Charges 12 and 13 were properly refused. They single out a part of the testimony and incorrectly state the law.

[15] Charge 8 is unintelligible.

[16] Charge 15 is confusing and misleading.

[17] Charge 16 is argumentative and misleading.

Charges 17, E, A-2, A-4, 11, and 19, if good, were covered by the court's oral charge.

[18] Charge D is faulty in one respect at least in that it binds the state to the proof of a conspiracy on the part of the defendant and "the other defendants jointly indicted with him."

[19] Charge 24 was properly refused. There was no evidence, tending directly or indirectly, to show that deceased was killed under circumstances constituting the offense of manslaughter in the first or second degree. The court should not charge the law on manslaughter when there is no evidence on which to base or rest the law. Babe Whitehead v. State, supra; Gafford v. State, 125 Ala. 1, 28 South. 406.

[20] The evidence being in conflict, the affirmative charge was properly refused.

[21] It does not appear in what connection the extract read by the solicitor from the Supreme Court report was used, or that its use in the solicitor's argument was in any wise injurious to the defendant. Irrespective of what the solicitor may have said or read to the jury, the oral charge of the court, afterwards given to the jury, clearly and correctly stated the law governing the trial of this case.

The use of the word "guity" in the judgment entry could have no other meaning than the word "guilty," as the same was used in the verdict returned by the jury, and its use in the judgment entry was a clerical error and is self-correcting. Askew et al v. State (Ala. App.) 91 South. 911;[2] Holland v. State, 11 Ala. App. 134, 66 South. 126; Id., 191 Ala. 662, 66 South. 1008; Kirk v. State, 13 Ala. App. 316, 69 South. 350; Brown v. State, 15 Ala. App. 611, 74 South. 733.

[22] The judgment of the court, after a recital of the verdict of the jury, states that it is "considered and adjudged that the defendant is guilty as found by the jury." This was a sufficient adjudication of the defendant's guilt. Ex parte Hardeman v. State, 202 Ala. 694, 81 South. 656; Talbert v. State, 140 Ala. 96, 37 South. 78, and authorities there cited.

We find no error in the record, and the judgment appealed from is affirmed.

Affirmed.