197 So.2d 283

**Elbert WILSON**

v.

**STATE.**

1 Div. 38.

Court of Appeals of Alabama.
March 28, 1967.

C. Clark Bulwinkle, Mobile, for appellant.

Richmond M. Flowers, Atty. Gen., and W. Mark Anderson, III, Asst. Atty. Gen., for the State.

JOHNSON, Judge.

Appellant was indicted by the Grand Jury of Mobile County at the May Session, 1964, for unlawfully possessing, selling, furnishing or giving away "amobarbital sodium, a salt of barbital, a narcotic drug." He pled not guilty, was tried by a jury on December 10, 1964, found guilty as charged and sentenced to a term of six years in the State penitentiary as punishment therefor. This sentence was suspended pending this appeal. Appellant filed a motion for a new trial and this motion was denied on March 12, 1965.

According to the testimony of Detective Joseph Romagnono, he and Detective Robert Mayo entered the Eagles Club in Mobile, Alabama, at 11:30 A.M., February 26, 1964, and observed appellant sitting at the bar. They walked up to him and engaged him in a "friendly conversation" as they "do while we [they] are out checking around." Romagnono testified, in part, as follows:

"He was going to sea, like I said he was a seaman and we decided we would check his seaman's papers. We had never seen his seaman's papers and he always stated to us he was a seaman, so we asked him if he would go in another room which was right next door and attached to the Eagles Club as a part of it, another side room. We went inside and we sat down at a table again. I said, Elbert, let's see some of your seaman's papers. He said, Okay and took out his billfold and he had a letter in his pocket and he threw them on the table, and he had some matches, two match boxes, and some cigarettes. So we were looking at all of the stuff he had on the table and I picked up a match box and I just opened it while we were sitting there talking and there was the thirteen spansules."

Detective Romagnono stated that he had no search warrant. He testified that he asked appellant if he had a prescription for the spansules and when appellant replied in the negative, he placed him under arrest, sealed the match box and took it to Dr. Nelson E. Grubbs, State Toxicologist for chemical analysis. The analysis revealed that the spansules contained "amphetamine

and amorbarbital sodium, the latter being a narcotic drug."

Appellant contends that his constitutional rights were violated by the use as evidence of the thirteen spansules which he alleges were secured by means of an unlawful search and seizure from his person.

■ The law is well settled that to be admissible at trial, evidence seized without a search warrant must be the product of a search incident to a lawful arrest. Duncan v. State, 278 Ala. 145, 176 So.2d 840; Benefield v. State, Fla., 160 So.2d 706; Mixon v. State, Fla.1951, 54 So.2d 190.

Sec. 154, Tit. 15, 1940 Code of Alabama provides:

"Arrest by officer without warrant; when and for what allowed.—An officer may also arrest any person, without warrant, on any day and at any time, for any public offense committed, or a breach of the peace threatened in his presence; or when a felony has been committed, though not in his presence, by the person arrested, or when a felony has been committed, and he has reasonable cause to believe that the person arrested committed it; or when he has reasonable cause to believe that the person arrested has committed a felony, although it may afterwards appear that a felony had not in fact been committed; or on a charge made, upon reasonable cause, that the person arrested has committed a felony."

■ The officers here had no warrant for appellant's arrest. Their testimony shows that they had no knowledge prior to the arrest that appellant had any drugs in his possession. They had no knowledge of any offense committed by appellant in their presence, nor did they have probable cause to believe that any felony had been committed by appellant.

In Chapman v. State, Fla.App.1964, 158 So.2d 578, the court said:

"An incidental search should be, as the term implies, incidental to the arrest. The primary purpose should be to arrest and the search should be purely incidental to it. An exploratory search is one in which the *search* is primary and the arrest is used as a pretext to justify the search."

See also O'Neil v. State, Fla.App.1967, 194 So.2d 40; Henderson v. United States, 4 Cir., 12 F.2d 528, 51 A.L.R. 420.

We feel that the use as evidence of the capsules was error since they were secured by means of an unlawful search and seizure.

This cause is due to be and the same is hereby

Reversed and rendered.

CATES, Judge, concurring in the result.

Perhaps Congress should deliberate as to submitting a universal compulsory lie detector test amendment to the Constitution.

While a Shipping Commissioner has a right to check a merchant seaman's papers and a peace officer patrolling the roads has a right to inspect a motorist's driver's license, I know of no law requiring a person to prove his identity when otherwise engaged in peaceful activity in a place where he is lawfully present. See Esco v. State, 278 Ala. 641, 179 So.2d 766.