218 So.2d 698

**Jon Bart MULLER**

v.

**STATE.**

**1 Div. 288.**

Court of Appeals of Alabama.

Oct. 8, 1968.

Rehearing Denied Nov. 5, 1968.

MacDonald Gallion, Atty. Gen., and Carl E. Watson, Asst. Atty. Gen., for the State.

Bert S. Nettles, Mobile, for appellant.

JOHNSON, Judge.

Appellant was indicted by the Grand Jury of Mobile County, Alabama, for the offense

of robbery. He was tried by a jury which found him guilty as charged and fixed his punishment at ten years in the penitentiary. From this judgment, appellant now appeals to this court.

Bonito J. Herman, witness for the State, testified that "between 3:30 and quarter to 4:00" on February 3, 1967, a man walked into his place of business; that the man was holding a shopping bag in his left hand; and that he put it in the witness's hand and told him to "go to the cash drawer and put only paper money in it." The witness further stated that the robber then told him to go to the safe; that he (the witness) opened the safe and said, "I don't believe there's anything here;" and that the robber then jerked out the drawers in the safe and turned them upside down and in the bottom drawer there was $319.00 which he took. Herman described the robber as follows:

"Well he was dressed in black. He had a jacket, a black, kind of silky sort of a jacket with a hood over it and a kind of a Halloween mask representing some kind of an animal's head. He had black trousers, black shoes. He even had black gloves on. The gloves looked like they were ladie's gloves, not men's gloves. And in his hand, in his right hand he had a very short snum [sic] nosed pistol."

Herman further testified that the robber locked two ladies and himself in the bathroom; that he (the witness) heard the bell over the door ring and knew that the robber had left the premises; and that he looked out of the window and saw him turn toward Jackson Street and disappear. Herman stated that an immediate complaint was made to the police and a description given them of the robber.

Milton Andry, a passing motorist, testified that on the afternoon in question he was driving North on Jackson Street and that:

"[W]e noticed a man running around a building with a sort of a jacket with a dark hood over his head and carrying a bag and we noticed he got in a car and as he got in the car he started pulling this hood thing off and a young lady was driving the automobile and she motioned to a car behind us to let her into the flow of traffic."

Andry also testified that the woman driving the automobile was a blonde. He further stated that he wrote the license number down and gave it to a policeman along with the description of the automobile, which he described on cross-examination as being a red Corvair.

Officer Siegfried Barnes of the Mobile Police Department testified that at about 3:50 P.M. on the date in question, Milton Andry gave him a slip of paper containing Alabama license tag No. 2 A 613 and the description of an automobile, which information he subsequently transmitted over his radio on the police communication system. Barnes also stated that he received this information from Andry about ten minutes after he received information over the police radio of a robbery on St. Francis Street.

Lt. Williams of the Mobile Police Department testified that he heard a report on the police radio of the description of a vehicle and the tag number of the car allegedly used in the hold-up; that he was familiar with both the tag number and the automobile; and that he knew that it had been driven on numerous occasions by Bart Muller. Williams stated that he knew Muller's address and that he directed police to it.

Officer Berkey of the Mobile Police Department testified that he went to the address to which Lt. Williams directed him over the police radio; and that upon arriving there he saw a 1962 red Corvair automobile bearing Alabama license tag No. 2 A 613.

Officer Ralph Jordan testified that he was directed to go to the same residence; that he went to the front door and knocked; that a young blonde female, later identified as Diana Crosby, answered the door;

that he asked her to bring everyone in the house downstairs and that she returned a few minutes later with appellant; and that he then informed them that they were under arrest. Jordan stated that, over the protest of appellant, appellant's room was then searched by the police who found a .38 caliber snub-nosed pistol containing six shells, a box containing a pair of girl's white dungarees which had a roll of bills in each pocket totalling $480.00, a red and white shopping bag, and a black jacket with a hood on it.

Appellant contends that the trial court erred in permitting the introduction into evidence of those items seized as a result of the search conducted at the time of his arrest; that there were no compelling reasons sufficient to justify a search in the absence of a search warrant; and that it would have been a "simple matter" for the police to have requested a search warrant.

In the oft' cited opinion of Duncan v. State, 278 Ala. 145, 176 So.2d 840, our Supreme Court stated in part:

"When police officers want to search a person's home they must have either a search warrant or a knowing, voluntary permission, *unless the search is incidental to a lawful arrest * * *"* (Emphasis added.)

■ In Wilson v. State, 43 Ala.App. 596, 197 So.2d 283, we stated:

"The law is well settled that to be admissible at trial, evidence seized without a search warrant must be the product of a search incident to a lawful arrest."

Tit. 15, Sec. 154, Code of Alabama, 1940, states:

"An officer may also arrest any person, without warrant, on any day and at any time, for any public offense committed, or a breach of the peace threatened in his presence; or when a felony has been committed, though not in his presence, by the person arrested, or when a felony has been committed, and he has reasonable cause to believe that the person arrested committed it; or when he has reasonable cause to believe that the person arrested has committed a felony, although it may afterwards appear that a felony had not in fact been committed; or on a charge made, upon reasonable cause, that the person arrested has committed a felony."

■ In the instant case, the officers had no warrant of arrest. Therefore, in order for the arrest of appellant to have been a lawful one, reasonable cause must be shown to have existed to believe that appellant committed the offense.

As the court stated in Berry v. State, 27 Ala.App. 507, 175 So. 407:

"[A]n officer * * * under the statute cannot justify an arrest upon the ground that he had reasonable cause to believe the person arrested had committed a felony, unless he has information of facts derived from credible sources, or from persons reasonably presumed to know them, which, if submitted to the judge or the magistrate having jurisdiction, would require the issue of a warrant of arrest. Cunningham v. Baker, 104 Ala. 160, 171, 16 So. 68, 53 Am.St.Rep. 27; Gibson v. State, 193 Ala. 12, 69 So. 533."

Here, the information within the knowledge of the police officers at the time of appellant's arrest clearly furnished grounds for a reasonable cause for believing that appellant had committed the robbery in question. It was much more than a mere suspicion. *Berry,* supra; Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441.

The officers knew, allegedly, that a robbery had been committed by a man wearing a dark colored hooded jacket and carrying a shopping bag. They also knew that a person allegedly fitting that description was seen in close proximity to the time and location of the offense; that this person was running and got into a 1962 Corvair automobile bearing Alabama license tag No. 2

A 613 and being driven by a "blonde headed" woman, and immediately was driven away; and that the automobile seen by the witness was registered in the name of appellant and that the automobile was subsequently seen parked behind appellant's residence.

It is our judgment that, from this information, probable cause existed that a felony had been committed; that there was reasonable cause to believe that the appellant had committed it; and that this information, if presented to a judge or magistrate, would have been sufficient for the issuance of a warrant of arrest. *Berry, supra.*

■ Thus, concluding that the arrest was legal, any search incident thereto was also legal and any evidence obtained as a result of the search was properly admitted into evidence. *Duncan,* supra; *Wilson,* supra.

Appellant contends that the trial court erred in denying appellant's motion for a special jury venire as required by Tit. 30, Sec. 63, Code of Alabama, 1940.

Act No. 366, Sec. 7, approved Nov. 6, 1959, Vol. II, p. 956, regarding counties with population of not less than 200,000 nor more than 400,000, states:

"No special venire shall be ordered or drawn for the trial or trials of a defendant or defendants in capital felonies, but a defendant or defendants in capital felony cases shall be entitled to strike from a list of forty-two competent jurors obtained from the regular juries in the court."

See Vol. 14–A, 1965 Cum.Supp. to Vol. 14, 1958, Recompiled, Code of Alabama, Appx., Sec. 543(11).

■ We take judicial notice of the fact that the population of Mobile County is between 200,000 and 400,000. Therefore, under this section, the trial court did not err in failing to draw a special venire.

■ During the qualification of the venire the following colloquy occurred:

"MR. HAAS: I will ask the Court to inquire of the panel if they are willing as the law requires to presume this Defendant to be innocent of any crime charged here and to require further that the State if they're able by competent evidence to prove his guilt beyond a reasonable doubt before they would convict him.

"THE COURT: That is a matter of law which the Judge will charge the jury as to and under their oaths they are required to abide by the law as given to them by the Court. I decline to place that question.

"MR. HAAS: We except."

Tit. 30, Sec. 52, Code of Ala., 1940, states the following:

"In civil and criminal cases, either party shall have the right to examine jurors as to their qualifications, interest, or bias that would affect the trial of the case, and shall have the right, under the direction of the court, to examine said jurors as to any matter that might tend to affect their verdict."

As stated in Sims v. Struthers, 267 Ala. 80, 100 So.2d 23:

"Section 52, Title 30, Code of 1940, confers on the parties the right, under direction of the court, within reasonable bounds, to examine jurors touching matters which might tend to affect their verdict, *but it does not empower the party to require the court to put such questions to the jury.* Avery Freight Lines, Inc. v. Stewart, 258 Ala. 524, 63 So.2d 895; Cox v. Roberts, 248 Ala. 372, 27 So.2d 617." (Emphasis added.)

See also Gholston v. State, 221 Ala. 556, 130 So. 69, wherein the Supreme Court of Alabama stated in part:

"[T]his section [Tit. 30, Sec. 52] does not empower the party to require the court to put such questions to the jury, even when properly framed."

As reflected by the colloquy set out hereinabove, counsel did not ask the question himself but requested the court to ask it. Such request was properly refused by the court.

■ Appellant contends that the trial court erred in failing to give defendant's requested charge No. 7 which reads as follows:

"I charge you, Gentlemen of the Jury, that the only foundation for a verdict of guilty in this case is that the entire jury shall believe from the evidence, beyond a reasonable doubt and to a moral certainty, that the defendant is guilty as charged in the indictment, to the exclusion of every probability of his innocence, and every reasonable doubt of his guilt, and, if the prosecution has failed to furnish such measure of proof, and to so impress the minds of the jury of his guilt, they should find him not guilty."

This charge was adequately covered by defendant's given charge No. 5 and was, therefore, properly refused. Tit. 7, Sec. 273, Code of Ala., 1940.

During direct examination of the robbery victim, Bonito Herman, the following occurred:

"Q. You have had an opportunity to see a person by the name of Diana Crosby have you not?

"A. MR. HAAS: Now Judge I object to all of this. It's not proper the way this is being done.

"THE COURT: Overruled.

"MR. HAAS: Except.

"MR. BRUTKIEWICZ: Read it back please.

"REPORTER: You have had an opportunity to see a person by the name of Diana Crosby have you not?

"A. She has been in my office.

"Q. And when was she in your office?

"A. She was in my office the day before if I recall the incident, that would be around the 1st or 2nd of February. She came in and asked—

"MR. HAAS: Now if the Court please this is not responsive.

"THE COURT: All right. I'll sustain that.

"Q. What if any contact did you have with her in your office?

"MR. HAAS: I object to that. It's immaterial and irrelevant. Hearsay.

"THE COURT: Overruled.

"MR. HAAS: Except.

"A. She asked how the account of Jon Muller stood and whether they were paid for the current month. I went to the ledger and verified and I told her that it was not paid for the current month.

"MR. HAAS: Now if the Court please I move to strike the answer on the grounds that it was hearsay, immaterial and irrelevant to this cause.

"THE COURT: Overruled.

"MR. HAAS: Except."

■ A witness may not testify to acts or statements made by third parties which occur outside the presence or hearing of the defendant. The declarations or conduct of a third party, not made or done in the presence of the defendant, are not admissible into evidence against the defendant unless a conspiracy was shown to have existed between defendant and said third party. Before such evidence can be admitted, it is necessary that a foundation be laid by proof addressed to the court, prima facie sufficient to establish the existence of such a conspiracy. Smith v. State, 133 Ala. 73, 31 So. 942; Tittle v. State, 15 Ala.App. 306, 73 So. 142.

■ A conspiracy is rarely proven by positive or direct testimony but usually by circumstances. Durden v. State, 18 Ala. App. 498, 93 So. 342; Hunter v. State, 112

Ala. 77, 21 So. 65; Gandy v. State, 29 Ala. App. 485, 198 So. 265.

 The record reveals that evidence was presented from which the jury might reasonably infer the existence of a conspiracy. Therefore, the declarations and conduct of the conspirator in furtherance of the common purpose were admissible against the co-conspirator. Thomas v. State, 133 Ala. 139, 32 So. 250.

We have carefully reviewed the entire record and conclude that the judgment of the lower court is due to be and the same is hereby

Affirmed.

CATES, Judge (dissenting).

What I cannot digest is the contradiction in the arrest of the appellant.

I.

Reasoning backwards I find my Brother JOHNSON deducing:

"Here, the information within the knowledge of the police officers at the time of appellant's arrest clearly furnished grounds for a reasonable cause for believing that appellant had committed the robbery in question. It was much more than a mere suspicion. * * *"

Yet the main factual premise for this conclusion is stated:

"Officer Ralph Jordan testified that * * * a young blonde female, later identified as Diana Crosby, answered the door; that he asked her to bring everyone in the house downstairs and that she returned a few minutes later with appellant; and that he then informed them that they were under arrest. * * *"

If it was necessary to bring "everyone" out of the house how can it be said that there was knowledge (within the constitutional standards) that appellant was present in the premises?

II.

Perhaps it was reasonable to expect that the appellant was in his own home. However, I fail to see fresh pursuit or any other recognized exception to justify dragging him out of his home without a warrant.