63 So.2d 895

AVERY FREIGHT LINES, Inc. et al. v.
STEWART.

7 Div. 175.

Supreme Court of Alabama.
March 19, 1953.

Starnes & Holladay, Pell City, and Sadler & Sadler, Birmingham, for appellants.

Ramon Stewart, pro se., Embry & Embry, Pell City, and T. Eric Embry, Birmingham, for appellee.

PER CURIAM.

This is a suit in which appellee as administrator of the estate of Edsel H. Stewart recovered a judgment against appellants for $25,000 for causing the death of Edsel H. Stewart in the collision between a truck and car.

There are only three assignments of error. The first relates to an occurrence in connection with the qualification of prospective jurors. The trial judge had ascertained that Casualty Reciprocal Exchange was appellant Avery Freight Lines' liability insurance carrier by proceeding conducted out of the presence of the jury. He then propounded to the jury panel the following question: "Are any of you stock-

holders or employees of the Casualty Reciprocal Exchange? And, for information of counsel only, gentlemen, do any of you have any relatives who work for that concern, Casualty Reciprocal Exchange?" There was no affirmative answer from the panel. Defendants' counsel then stated: "And we renew our motion." The court: "I overrule the motion." Defendants' counsel: "Same grounds, being required to strike from the panel—". The court: "Yes. He's got it in the record." Defendants' counsel: "All right. And we except." The motion then renewed supposedly referred to a statement by defendants' counsel to the court that "defendant objects to being put upon trial in this case, and being required to strike from the jury panel from which a jury is to be selected, in that the jurors were in the court room when the case was called for announcement of attorneys, and Mr. Eric Embry, one of the attorneys for the plaintiff, inquired of the jurors as to whether or not any member of the panel was stockholders (sic) or employees (sic) of the * * * Casualty Reciprocal Exchange."

The assignment of error is that the "court erred in propounding the question to the jury panel, 'and, for information of counsel only, gentlemen, do any of you have any relatives who work for that concern, Casualty Reciprocal Exchange,' to which action of the court the appellants objected and duly reserved an exception." The record shows no objection to the quoted feature of the question propounded by the court to the jury panel. The renewal of the motion as shown by the record is not such an objection in terms or effect. The portion claimed in the assignment to be objectionable was a part of a question, a portion of which is not now claimed to be objectionable. The motion which was renewed was an objection to being put on trial, and to strike from the panel, not on account of what is now thought to be objectionable but presumably on account of the entire question of which it is a part. So that, the record does not sustain the assignment of error.

The contention which appellant makes, however, is that the quoted feature of the question was objectionable because it was not propounded by plaintiff's counsel or by the court at his request, but that it was the ex mero motu act of the court. We could not sustain that contention even if it were properly raised.

The inquiry is conceded to be one available to plaintiff's counsel under section 52, Title 30 of the Code. Cox v. Bennett, 250 Ala. 698, 36 So.2d 86. Under the statute counsel are not confined in their inquiry to matters which disqualify a juror, but it extends to what is appropriate tending to show their interest or bias. Dyer v. State, 241 Ala. 679(2), 4 So.2d 311. The trial judge could refuse without error a request that he propound the inquiry, since it did not go to the disqualification of a juror, and section 52, supra, does not apply to the judge. Cox v. Roberts, 248 Ala. 372, 27 So.2d 617; Leach v. State, 245 Ala. 539, 18 So.2d 289.

The inquiry of the panel by the judge as to their relation to or interest in the insurance carrier of defendant was proper unless attended by undue prejudicial circumstances. Vredenburgh Saw Mill Co. v. Black, 251 Ala. 302, 37 So.2d 212; Fortson v. Hester, 252 Ala. 143, 39 So.2d 649. It is the imperative duty of the judge to ascertain whether the jurors are qualified. Leach v. State, supra; Section 6, Title 30, Code. But such duty ends there.

Considering those features of the law, we think it is in the discretion of the judge whether he will question the panel of jurors as to matters which tend to show interest or bias not amounting to disqualification, and that whether or not he is requested by counsel to do so. We cannot sustain appellants' contention in that respect.

### Assignment No. 3.

Charge 17 refused to defendants is the basis of this assignment and is as follows:

"If, after a consideration of all the evidence, you should determine to award the plaintiff damages, you cannot in estimating the amount, consider the pecuniary value of the life of Mr. Stewart but can only award damages

by way of punishment to the defendant; and if the jury believe that damages in a small amount will be sufficient punishment for the act or acts of the defendant, it would be unjust to award damages in a large amount."

The court gave charge 25 to the effect that compensatory damages were not recoverable. And in the oral charge the court instructed the jury that:

" * * * he would be entitled to recover what we know in law as punitive damages. That is, damages by way of punishment to the defendants, for the wrong you find from the evidence they committed as charged there in the complaint. Punitive damages.

"And the purpose of punishment, gentlemen, is two-fold. One, to punish the defendants for the wrong committed, if you find they did commit a wrong, of course. If you are reasonably satisfied from the evidence that they did commit the wrong as charged there in that complaint. And also to deter other people from committing like wrong. Punishment, and the deterring effect. In no event, of course, could it exceed the amount claimed in the complaint."

Also in given charge 18 the court instructed the jury that the damages are by way of punishment of defendants. And in charge 16 that the damages are punitive and should be measured by the quality of the wrongful act and the degree of culpability involved. This last stated meaning of the principle has been approved. Jack Cole, Inc., v. Walker, 240 Ala. 683, 200 So. 768; Patrick v. Mitchell, 242 Ala. 414, 6 So.2d 889. But it is not the only or necessary way to express it. Many charges have been approved without it. Richmond & Danville R. R. Co. v. Freeman, 97 Ala. 289, 11 So. 800.

We think the principle of refused charge 17 was sufficiently covered in all its material parts.

### Assignment No. 2.

This assignment relates to the amount of the verdict, $25,000. The deceased was twenty-seven years of age. He was riding on the front seat of a 1950 Plymouth car, as were two other men, and was sitting on their right. No one else was in the car. Its owner, Howard, was driving.

The facts briefly stated are: Two automobiles and defendant Avery Freight Lines' truck were on Highway 78, all traveling in a westerly course. A 1938 Plymouth car was ahead and Howard's car was next and the truck behind. The truck was a tractor-trailer, and had an overall weight of about 38,000 pounds. The highway was substantially straight for 1,000 or 1,200 feet westerly from an overhead railroad pass. The highway extending westerly from the overhead crossing was down grade to the place of the accident. At a point immediately east of that location the highway department was having some work done on the south lane of the road which was occupied by trucks and workmen: so that only the north lane, on the right going west, was open for traffic. There were no other travelers at that time in either direction. About 800 feet east of the location of the accident there was placed on the side of the road a warning sign calling for a 15 mile per hour speed, and at about 700 feet there was another such sign; and at about 250 feet east of it there was stationed a flagman to regulate traffic. This was at the west end of a bridge which was a part of the highway. Highway 78 is a trunk road, paved, and about 22 feet in width. The two cars as they passed the flagman were about 20 fee apart, traveling about 15 or 20 miles per hour. The truck was farther behind, traveling faster. At a point shortly west of where the highway workers were engaged, a road, called the Cook Springs Road, extends off of Highway 78 to the North, or to the right as these vehicles were traveling. That portion of the highway is on an embankment about 10 feet high, which extended west of the intersection of the highway and Cook Springs Road. The 1938 Plymouth undertook to pass into the Cook Springs Road. For some distance before reaching it, the driver indicated his intention to turn by extending his left hand with his fingers pointed upward out of his car window, and the car was moving slowly. The 1950 Plymouth, in which the deceased

528

was riding, followed at a slow pace. The truck driver saw the hand signal. He testified that he had previously had no trouble with his brakes. The brake system operated on both the tractor and trailer at the same time when applied with the foot. The hand brake operated the same system but only applied it to the trailer. The truck driver had been coasting down grade. When he saw the signal he applied the brake with his hand; but he said it did not take hold. He then applied the foot pedal which then only took effect on the tractor. Before it could be slowed down enough to prevent impact, the tractor hit the Howard car ahead and pushed it forward. It then hit that car again pushing it against the front car (1938 Plymouth), which was attempting to turn, and knocked it on into the Cook Springs Road, turning it over a couple of times, and knocked the Howard car off the road and down the embankment north of the highway and west of the Cook Springs Road, and then the truck with the tractor and loaded trailer turned over and fell on top of the Howard car, where the three men were seated on the front seat. The first impact had knocked loose the front seat and shoved it back against the back seat. The weight of the truck mashed in the top of the Howard car on the heads of the men, but two of them were able to get out. The deceased Stewart was pinned down so that his chin was pressed against his chest, cutting off his breathing, and he strangled to death before he could be extricated. This occurred about 11:30 o'clock in the morning on a bright, clear day.

There was some evidence of skid marks on the highway indicating that they were made by the truck. When the truck was pulled out the wheels on the tractor and trailer were locked. The truck had eight forward speeds. The driver put the gear in the third speed going down grade which helped serve as a brake. A lower speed gear would have helped more but he did not try it. With his brakes working properly he could stop the loaded truck in 60 or 70 feet. He was about 75 feet from the Howard car when he saw that his brakes would not hold.

The opinion is here entertained that the verdict of the jury, the circumstances

shown by the evidence and incidents of the trial are such as not to justify the requirement of a remittitur under the statute, section 811, Title 7, Code, and that there is no reversible error within the assignments of error.

The foregoing opinion was prepared by Foster, Supernumerary Judge of this Court while serving on it at the request of the Chief Justice, under authority of Title 13, section 32, Code, and is adopted by the Court as its opinion.

The judgment is therefore affirmed.

Affirmed.

LIVINGSTON, C. J., and BROWN, SIMPSON and GOODWYN, JJ., concur.