FIRST NATIONAL BANK IN GREEN-WICH as Administrator c.t.a. of the Estate of Frenelia Lillian Putnam, deceased, etc., Plaintiff-Appellant,

v.

NATIONAL AIRLINES, INCORPORAT-ED, Defendant-Appellee.

Samuel KESSLER, as Administrator de bonis non of the Estate of Rodma Lewis Osman, deceased, Plaintiff-Appellant,

v.

NATIONAL AIRLINES, INCORPORAT-ED, Defendant-Appellee.

Nos. 245, 246, Dockets 25915, 25916.

United States Court of Appeals Second Circuit.

Argued Feb. 15, 1961.

Decided April 6, 1961.

See, also, D.C., 22 F.R.D. 46.

622

Theodore E. Wolcott, New York City, for plaintiffs-appellants.

John G. Reilly, New York City (Robert F. Ewald, Bigham, Englar, Jones & Houston, New York City, on the brief), for defendant-appellee.

Before LUMBARD, Chief Judge, and CLARK and SMITH, Circuit Judges.

LUMBARD, Chief Judge.

On February 14, 1953, National Airlines Flight 470, en route from Tampa to New Orleans, met with winds of hurricane velocity and crashed in the Gulf of Mexico near the Alabama shore. None of the 46 on board survived the disaster and among those killed were Frenelia Lillian Putnam whose administrator, acting for the benefit of Mrs. Putnam's daughter, Muriel Putnam Smith, is the appellant in #25915, and Rodma Lewis Osman, whose administrator acting for the benefit of Mrs. Osman's aunts and uncles, is the appellant in #25916.

It was unclear where the accident occurred; whether within the territorial jurisdiction of Alabama, in which case the Alabama Wrongful Death Act, 7 Alabama Code § 123, was applicable and the district court had jurisdiction because of diversity of citizenship, or on the high seas beyond the jurisdiction of Alabama, in which case the Federal Death on the High Seas Act, 46 U.S.C.A. §§ 761–767, applied and jurisdiction lay in admiralty.[1] Claims under both statutes were joined and after a hearing in which the evidence was limited to the situs of the accident, Judge Levet, reaching the same result as had the jury which he termed "advisory," found that the accident occurred on the high seas more than one marine league from the Alabama shore. The court, therefore, dismissed the Alabama wrongful death action and proceeded in admiralty under the Death on the High Seas Act to try the issue of damages, National having admitted its liability for the accident. After trial, Judge Levet held that Mrs. Osman's aunts and uncles could not recover since they had not shown, as the statute requires, 46 U.S.C.A. § 761, that they were "dependent" relatives of Mrs. Osman; Mrs. Smith was denied recovery since she had failed to establish that the death of her mother, Mrs. Putnam, caused her a "pecuniary" loss as the Death on the High Seas Act requires, 46 U.S.C.A. § 762.[2]

1. The complaint under the Death on the High Seas Act was brought on the civil side of the district court. But after this court decided Noel v. Linea Aeropostal Venezolana, 2 Cir., 1957, 247 F.2d 677, 66 A.L.R.2d 997, holding that rights under the Death on the High Seas Act were cognizable only in admiralty, the appellants sought and Judge Bicks granted a transfer to the admiralty side of the court.

2. In a companion suit, Mrs. Smith recovered $38,930 on account of the pecuniary loss caused to her by the death of her father, Eben F. Putnam, who had been killed in the same crash.

The plaintiffs now appeal from the order dismissing the Alabama claim, which was harmful to them since under the Alabama statute damages are not designed to compensate a decedent's relatives for "pecuniary" loss but are rather fixed by the defendant's degree of culpability and designed to punish him and deter others from similar negligence, Avery Freight Lines, Inc. v. Stewart, 1953, 258 Ala. 524, 63 So.2d 895, 897. They claim that the district court committed error in deciding the issue of situs before hearing evidence on negligence and damage, in treating the jury as advisory and in excluding certain evidence bearing upon the locale of the accident. We disagree and, since we also find that the trial court was correct in holding that the plaintiffs had failed to establish a right to recover under the Death on the High Seas Act, we affirm the judgment below.

I. *The dismissal of plaintiffs' claim under the Alabama Wrongful Death Act.*

The plaintiffs' first contention is that Judge Levet, by trying the issue of jurisdiction before reaching the questions of negligence and damage, violated Judge Bicks' pretrial order [referred to supra in footnote 1] that "the Alabama causes of action * * * and the cause of action alleged in admiralty be consolidated for trial and shall be tried together, the civil claims to be tried to a jury and the claim in admiralty simultaneously be tried to a court." The order continues to state "that separate and several verdicts and judgments shall be rendered and entered in respect of each claim in such form and manner as the Trial Court shall direct * * *"

Though the procedure adopted by Judge Levet may not have been in accord with the letter of this order, we can see no reason why that order should be interpreted to prevent the judge trying the case from resolving the jurisdictional question before reaching the issues of liability and damages; in any event, Judge Bicks' order under the view of the "law of the case" concept taken in this circuit was not binding but rather addressed to the good sense of his colleagues. Higgins v. California Prune & Apricot Grower, Inc., 2 Cir., 1924, 3 F.2d 896, 898; Meyers v. Jay Street Connecting Railroad, 2 Cir., 288 F.2d 356, at Note 10. Cf. Federal Rules of Civil Procedure, Rule 16, 28 U.S.C.A.

The procedure chosen by Judge Levet was permissible under Rule 42(b) of the Federal Rules of Civil Procedure and was eminently sensible. Since the elements of damages under the Alabama statute were different from those under the Death on the High Seas Act, it was wise to determine at the outset which statute was applicable in order to avoid the presentation of unnecessary evidence. The procedure adopted also prevented the waste of having a jury sit through a full trial only to find at the end that jurisdiction lay in admiralty and, therefore, their services were not needed.

The plaintiffs next complain that the trial judge deprived them of their right to jury trial on the issue of where the accident occurred by labeling as "advisory" the jury's negative response to the question whether the accident had occurred "over the land area of Alabama or within a marine league of the shore of Alabama." [3] Since the trial judge reached the same conclusion as the jury and since the jury had not been told that their function was merely to advise, the plaintiffs' right to jury trial on the factual issue dispositive of the jurisdictional question was not impinged. There appears to be no right of jury trial on these jurisdictional issues, see 5 Moore para. 38.36, but in any event there was no prejudice to the plaintiffs since they had a jury trial.

We find no merit in plaintiffs' contentions relating to the exclusion of

3. Judge Levet was correct in ruling that Alabama's boundary extends only one marine league from her shore. United States v. State of Louisiana, 1959, 363 U.S. 1, 82, 80 S.Ct. 961, 4 L.Ed.2d 1025.

evidence bearing upon the situs of the accident. The plaintiffs principally object to the exclusion of a portion of the deposition of George W. Roberson, a gulf seaman, wherein Roberson, who had said that he had joined some men who were searching for the bodies of the victims, stated that "we cruised this area two or three days. They found some off Petit Bois Island." The statement was properly excluded as hearsay since on its face it reveals that Roberson himself was not present when the bodies were found. Had he been present it is inconceivable that he would not have been questioned further on the precise location of the bodies.

■ Excluded also was another portion of Roberson's deposition wherein he said that while standing on the shore at about 5:00 P.M. on the day of the accident he heard an airplane going west toward the gulf. Since there was nothing to show that this was Flight 417, since the plane Roberson heard was heading toward the gulf and since Flight 417 was in the air at least as late as 5:10, this testimony was properly excluded as not being sufficiently relevant.

We find no merit in the contention that Judge Levet conducted the trial on the jurisdictional issue in a prejudicial manner.

II. *Denial of Recovery under the Death on the High Seas Act.*

■ In the Osman case, No. 25916, counsel for the plaintiffs admitted that he could not show that Mrs. Osman's aunts and uncles, the only relatives that survived her, were dependent upon her. Therefore, under § 761 of the Death on the High Seas Act, 46 U.S.C.A. § 761, which requires a showing of dependency on the part of all claimants except a wife, husband, parent or child of the decedent, the Osman plaintiffs were precluded from recovery.

■ Mrs. Smith, as a child of Frenelia Putnam, did not have to show that she was dependent upon her mother but did have to establish a "pecuniary" loss. This she failed to do.

Mrs. Smith failed to come forward with specific evidence from which the trial court could estimate her pecuniary loss. Although she testified that she never had to go shopping because her mother delivered groceries from Dave's Market in Greenwich, nine miles from her house, she did not say how often her mother made these deliveries nor what, if any, expense or inconvenience she was put to with respect to such deliveries after her mother's death. There was no proof that Mrs. Putnam paid for the groceries that she brought to her daughter. Similarly Mrs. Smith did not say how often her mother took care of her two young children, or how often her mother brought toys to those children, or what the value of such toys was.

Without giving any details, Mrs. Smith testified that her mother advised and assisted her in the organization and management of her household. The district court held that such advice and assistance could not be measured by any "material standard" and therefore could not be compensated for in damages. Though Mrs. Smith was thirty-one years of age, married and set up in her own household, it is conceivable, though unlikely, that she could have shown that her mother's simple guidance in domestic affairs had a dollar and cents value. But the complete lack of proof of what her mother did and of any evidence from which the value of her help might be calculated, precludes her from recovery. Whatever may be the rule for minor children, it is clear that those who have reached their majority must be very specific to show that their parents' guidance had a pecuniary value beyond the irreplaceable values of companionship and affection. Cf. Michigan Central R. R. Co. v. Vreeland, 1913, 227 U.S. 59, 73, 33 S.Ct. 192, 57 L.Ed. 417.

Affirmed.