Alice M. CURRY et al., Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. No. 49042.

United States District Court, N. D. California.

Dec. 3, 1971.

Martin J. Jarvis, Jarvis, Miller & Brodsky, Inc., San Francisco, Cal., for plaintiffs.

James L. Browning, Jr., U. S. Atty., Lawrence F. Ledebur, Chief, Admiralty and Shipping Section, Dept. of Justice, for defendant; Lillick, McHose, Wheat, Adams & Charles, John W. Ford, Tristam B. Brown, David W. Condeff, San Francisco, Cal., of counsel.

## OPINION AND ORDER DETERMINING DAMAGES

GEORGE B. HARRIS, Senior District Judge.

On May 18, 1971, 327 F.Supp. 155, this court filed its MEMORANDUM OF DECISION RE LIABILITY, finding for plaintiff, but concluding that any damage recovery would have to be reduced by 50% because of plaintiff's contributory negligence. The court reserved decision on the nature and measure of

damages, and the parties were directed to submit written memoranda thereon.

Following submission of such memoranda and extensive oral argument, the court is now prepared to make its findings concerning the damages to be awarded in this case.

■ Before discussing damages, one procedural matter must be resolved. The court found in its MEMORANDUM OF DECISION RE LIABILITY that jurisdiction herein lay under the Public Vessels Act (46 U.S.C. § 781 et seq.) and the Suits in Admiralty Act (46 U.S.C. § 741 et seq.). Plaintiff now requests that the court amend its earlier Conclusions of Law to find supplementary jurisdiction under the Death on the High Seas Act (46 U.S.C. § 761 et seq.) and the California wrongful death statutes (Code of Civil Procedure § 377 and Probate Code § 573). This the court declines to do.

Despite a direction from the court, plaintiff was unable to cite a single case in which jurisdiction under the Death on the High Seas Act was found under facts similar to those in the instant case. On the contrary, abundant authority supports the position that the jurisdictional bases invoked here against the United States are exclusive in their sphere. *See* 46 U.S.C. § 745; Brady v. Roosevelt S. S. Co., 317 U.S. 575, 577, 63 S.Ct. 425, 87 L.Ed. 471 (1943); Johnson v. United States Shipping Board Emergency Fleet Corporation, 280 U.S. 320, 326–327, 50 S.Ct. 118, 74 L.Ed. 451 (1930); Mejia v. United States, 152 F.2d 686, 687 (5th Cir. 1946), cert. den., 328 U.S. 862, 66 S.Ct. 1366, 90 L.Ed. 1632 (1946); Green v. New York & Cuba Mail Steamship Company, 215 F.Supp. 554, 559 (S.D.N.Y.1962); 2 Norris, The Law of Seamen § 636 at 753 (2d ed. 1962). *Cf.* Epling v. M. T. Epling Company, 435 F.2d 732, 736–737 (6th Cir. 1970), cert. den., 401 U.S. 963, 91 S.Ct. 990, 28 L.Ed.2d 247 (1971) (exclusivity of Jones Act); Petition of United States, 367 F.2d 505, 512 (3d Cir. 1966), cert. den., Black v. United States, 87 S.Ct. 953, 17 L.Ed.2d 805 (1967), reh. den., Allen v. Mathiasens Tanker Industries, Inc., 386 U. S. 1000, 87 S.Ct. 1303, 18 L.Ed.2d 354 (1967) (exclusivity of Jones Act).

1. *Conscious Pain and Suffering*

■ The law provides that in a seaman's action for wrongful death, one of the recoverable items of damage, if proved, is the decedent's conscious pain and suffering prior to death. *See* Petition of United States Steel Corporation, 436 F.2d 1256, 1275 (6th Cir. 1970), cert. den., Fuhrman v. United States Steel Corp., 402 U.S. 987, 91 S.Ct. 1660, 29 L.Ed.2d 153 (1971), reh. den., Lamp v. United States Steel Corp., 403 U.S. 940, 91 S.Ct. 2247, 29 L.Ed.2d 720 (1971); Petition of Oskar Tiedemann and Company, 236 F.Supp. 895, 905 (D.Del.1964), cert. den., Black v. United States, 386 U.S. 932, 87 S.Ct. 953, 17 L.Ed.2d 805 (1967), reh. den., 386 U.S. 1000, 87 S.Ct. 1303, 18 L.Ed.2d 354 (1967).

■ Findings of Fact numbers 18 and 20 of the MEMORANDUM OF DECISION RE LIABILITY require the conclusion that decedent Curry did suffer considerable pain and anguish prior to his death. The court finds the amount of $15,000 to be a fair award in damages for the pain and suffering endured by decedent.

2. *Future Earnings, Pension, and Fringe Benefits*

Plaintiff has estimated the economic loss to the Curry family by reason of decedent's death to be based on several factors. Mr. Eden, a graduate economist, concluded that decedent had a work expectancy of 22 years at the time of his death. This estimate rested on the assumption, challenged by defendant, that decedent's work life would not be truncated because of his health. Plaintiff contends that decedent would have continued his sea-going career for the remainder of his expected work life and would have, in all likelihood, upgraded his Marine Engineer's License to become a permanent First Assistant Engineer

from his status at death of Second Assistant Engineer holding a temporary First Engineer's License.

The MEBA–PMA Welfare Administrator, an official from the union of which decedent was a member, testified that decedent had accumulated 13 years of pension credit and that by his death he and his surviving family also lost valuable health, welfare, and other fringe benefits.

Plaintiff concluded that decedent would have earned a net average of $15,000 per annum for the remainder of his work life. This figure included estimates for taxes, personal consumption, normal wage increases, and a discount figure of 6.4% as proposed by Mr. Eden.

Defendant vigorously disputes the factors and conclusions reached here by plaintiff. Defendant claims that the estimates of future earnings made by plaintiff's witnesses were inaccurate because they assumed that at the time of his death decedent was holding a First Engineer's License, whereas in fact he was holding only a temporary First Engineer's License. Defendant notes that such temporary licenses were being issued solely in response to the increased shipping needs of the Viet Nam War. Thus, when such temporary licenses were rescinded, decedent would have remained in his pre-existing status of Second Assistant Engineer. The termination of this temporary licensing program was effected by a notice published in the April 1, 1971, issue of the Federal Register (36 F.R. 6014).

Defendant also challenges the assumption that decedent would have or could have stayed at sea. The records of decedent's former employer, P. G. & E., reveal that decedent had been a shoreside plant engineer for 19 years prior to his sea-going service, although he had done part-time work as a shoreside relief marine engineer. Since after the Second World War, decedent's only sea-going duty prior to the service which culminated in his death was during 1951 and under conditions of similarly temporary need because of the Korean War.

Defendant makes the strong argument that the very fact of decedent's asthmatic condition, as found by this court, militated against his being able to continue at sea. Were he to have continued at sea, he would not have had access to the kind of medical attention which might be called for in the case of a man with an asthmatic condition such as his. Because of his physical condition, decedent's life expectancy as well as his work expectancy was shortened.

Defendant estimated that decedent's loss of wages would be approximately $10,000 per annum for the remainder of his work life, however long that might be. Defendant's figures are based on decedent's average earnings for the five years (1962–1967) preceding his death.

■ With respect to the calculation of damages here, some general observations about the applicable law are in order. In determining an award for lost earnings, the courts have looked to several factors, including a projection of decedent's earning history, his health, diligence, prospects for advancement, and the economic conditions of the industry in which he is engaged. *See* Petition of United States Steel Corporation, *supra*, 436 F.2d at 2170; In re Sincere Navigation Corporation, 329 F. Supp. 652, 659 (E.D.La.1971); Petition of Risdal & Anderson, Inc., 291 F.Supp. 353, 357 (D.Mass.1968). The Court must look to all reasonable probabilities, including those for advancement and wage increases. See Petition of United States Steel Corporation, *supra*, 436 F. 2d at 1272 (relied on 4%–5% annual increase in wages); United States v. Furumizo, 381 F.2d 965, 970 (9th Cir. 1967) (can take into account probable promotions); Petition of Marina Mercante Nicaraguense, S.A., 248 F.Supp. 15, 26 (S.D.N.Y.1965), modified, 364 F. 2d 118 (2d Cir. 1966), cert. den., Marina Mercante Nicaraguense, S.A. v. McAllister Bros., Inc., 385 U.S. 1005, 87 S.Ct. 710, 17 L.Ed.2d 544 (1967), reh.

den. 386 U.S. 929, 87 S.Ct. 851, 17 L. Ed.2d 803 (1967) (must assume advancement and wage increases); Naylor v. Isthmian S. S. Co., 94 F.Supp. 422, 424 (S.D.N.Y.1950), rev'd. on other grounds, 187 F.2d 538 (2d Cir. 1951) (look to chance for increased earnings in future; here decedent had been taking steps towards being a licensed officer).

■■ Earning capacity includes the probability of fringe benefits, Petition of United States Steel Corporation, *supra* at 436 F.2d 1271, and, where a seaman is concerned, the court may also consider the value of his food and lodging while at sea as part of his compensation. Bartholomew v. Universe Tankships, Inc., 279 F.2d 911, 916 (2d Cir. 1960).

■■ Once the decedent's work expectancy and average earnings therefor are computed, the total must be adjusted for taxes and expenses of the decedent. In re Sincere Navigation Corporation, *supra*; Petition of Marina Mercante Nicaraguense, S.A., *supra*, 248 F.Supp. at 26. In short, the court must determine not only what decedent would have earned had he lived, but what portion of those earnings would his beneficiaries have actually realized. Simpson v. Knut Knutsen, O.A.S., 296 F.Supp. 1308, 1312 (N.D.Cal.1969), aff'd in part, remanded in part, 444 F.2d 523 (9th Cir. 1971). The factors involved in determining the likely percentage of contribution to have been made to the beneficiaries by the decedent include: the number of dependents, history of generosity and past contributions, and any foreseeable changes in the patterns thereof. Petition of Risdal & Anderson, Inc., *supra*, 291 F.Supp. at 358.

Taking all factors into account, including the fact of increases on an annual basis in virtually all professions, the value of decedent's food and lodging while at sea, the value of his pension and other fringe benefits, the likelihood of his remaining at sea and for what length of time, the likelihood of his advancement, the fact of the depreciating dollar, the expenses of decedent and his likely contributions to his family, taxes, and a discount rate where appropriate to determine present worth, the court concludes that plaintiff should be awarded the sum of $277,500 for the loss of decedent's future earnings, pension, and fringe benefits.

■ The figure of $277,500 is based on two major premises: first, that decedent would have stayed at sea until 1971, which accounts for $52,500 of the award. Thereafter, however, reasons of health and the termination of the temporary licensing program would dictate that decedent would have worked shoreside. The credibile evidence on this point indicates that, second, decedent would have continued in his former position at P. G. & E. or in comparable employment for the remaining 18 years of his 22-year work life. Again, taking all factors into consideration, the court finds that decedent would have contributed a net average of $12,500 to his family for those 18 years of work at P. G. & E. Thus the total award for lost earnings, pension, and fringe benefits is $52,500 plus $12,500 x 18 which equals the above-cited total of $277,500.

### 3. *Nurture for Mrs. Curry*

■ The case law supports the conclusion that under the facts of this case, Mrs. Curry is not entitled to any recompense by way of damages for loss of nurture or consortium. *See* Simpson v. Knutsen, *supra*, 444 F.2d at 524; Igneri v. Cie. de Transports Oceaniques, 323 F.2d 257, 266 (2d Cir. 1963), cert. den., 376 U.S. 949, 84 S.Ct. 965, 11 L.Ed.2d 969 (1964); First Nat. Bank in Greenwich v. National Air Lines, Inc., 171 F. Supp. 528, 538 (S.D.N.Y.1958), aff'd, 288 F.2d 621 (2d Cir. 1961), cert. den., Kessler v. National Airlines, Inc., 368 U.S. 859, 82 S.Ct. 102, 7 L.Ed.2d 57 (1961).

### 4. *Loss of Services for Mrs. Curry*

■ Loss of Services because of the death of decedent, unlike loss of nurture or consortium, is a pecuniary loss capable of measurement and thus recoverable

as an item of damages herein. *See, In re Sincere Navigation Corporation, supra*; Simpson v. Knut Knutsen, *supra*, 296 F.Supp. at 1312, 1313.

■ The evidence is uncontradicted as to decedent's concern for and devotion to his family. Decedent possessed the mechanical ability to effect numerous repairs in his home and provided regular services to his wife and family. Based upon his anticipated life expectancy of 29.1 years, the court finds the value of decedent's services to be $200 annually for the four years he would have been at sea and $500 annually for the remaining 25.1 years of his life, for a total of $13,350.

5. *Nurture for Curry Children*

■ The law provides that each of decedent's five surviving children is entitled to an award in damages for the loss of nurture resulting from the wrongful death of their father. *See* Mich. Cent. R.R. v. Vreeland, 227 U. S. 59, 73, 33 S.Ct. 192, 57 L.Ed. 417 (1913); Moore-McCormack Lines, Inc. v. Richardson, 295 F.2d 583, 588 (2d Cir. 1961), cert. den., 370 U.S. 937, 82 S.Ct. 1577, 8 L.Ed.2d 806 (1962), reh. den., 370 U.S. 965, 82 S.Ct. 1580, 8 L. Ed.2d 835 (1962).

■ Contrary to the position of defendant, a realistic view of family influence in the case of the Currys dictates that nurture for each child would effectively continue until he were at least 21, not 18. *See* Petition of Canal Barge Company, 323 F.Supp. 805, 821 (N.D. Miss.1971).

■ Each Curry child will be awarded $300 for each year until age 21 or until 1971, whichever occurred sooner (based on decedent's being at sea during that period) and $1000 for each year thereafter until age 21. Thus the awards for each child are as follows:

| | | |
|---|---|---|
| Michael Curry | 18 | $ 900 |
| Patrick Curry | 16 | $ 2,900 |
| Don Curry | 15 | $ 3,900 |
| Sean Curry | 12 | $ 6,900 |
| Robert Curry | 9 | $ 9,900 |
| | Total .... | $24,500 |

6. *Pre-Judgment Interest*

■ Plaintiff contends that any damage award made must be increased by the addition of pre-judgment interest on the principal sum. While recognizing that the award of such interest is discretionary in admiralty, plaintiff contends that it is available under both the Death on the High Seas Act and the Jones Act and should be awarded in this case.

■ Defendant relies on the fact that 46 U.S.C. § 782 specifically precludes the award of pre-judgment interest in cases arising under the Public Vessels Act. Since this court has declined to find jurisdiction under the Death on the High Seas Act, plaintiff cannot predicate a claim for pre-judgment interest upon that statute. Moreover, it is clear that pre-judgment interest is barred under the Public Vessels Act or the Suits in Admiralty Act, 2 Norris, *supra*, § 639 at 761, and this must preclude the granting of pre-judgment interest herein even were jurisdiction to exist under the Death on the High Seas Act.

7. *Post-Judgment Interest*

Post-judgment interest at the rate of 4% per annum will be awarded.

8. *Discount to Present Value*

■ The damage awards made herein for each element of compensable loss take into account a discount rate to present value of 6.4% and an inflationary rate of 3%–4%. *See* In re Sincere Navigation Corporation, *supra*, 329 F. Supp. at 660.

*Conclusion*

The damages to be awarded to plaintiff are itemized as follows:

| | |
|---|---|
| Conscious Pain and Suffering ......... | $ 15,000 |
| Future Earnings, Pension, and Fringe Benefits .................... | $277,500 |
| Loss of Services for Mrs. Curry ....... | $ 13,350 |
| Nurture for Curry Children ........... | $ 24,500 |
| Total ....... | $330,350 |

This figure is to be reduced by 50% because of decedent's contributory negligence, for a total award of $165,175.

It is so ordered.