459 So.2d 827 (1984)
ALABAMA POWER COMPANY and Asplundh Tree Expert Company
v.
James BONNER.
82-1032.
Supreme Court of Alabama.
September 14, 1984.
Rehearing Denied November 9, 1984.
*828 J. Garrison Thompson and Philip Henry Pitts of Pitts, Pitts & Thompson, Selma, for appellants.
Wyman O. Gilmore, Grove Hill, and L.Y. Sadler, Jr., Camden, for appellee.
SHORES, Justice.
This is an appeal by the defendants from a judgment for plaintiff based upon a jury verdict in the amount of $500,000.00.
Bonner, plaintiff, brought this action against Alabama Power Company (APCo) and Asplundh Tree Expert Company (Asplundh) to recover damages for wrongfully cutting timber on real property owned by Bonner in Wilcox County. The first claim alleged fraud on the part of APCo in making false representations to Bonner concerning the cutting of danger trees; the second claim was also based upon trespass in cutting timber upon plaintiff's real property. This trespass claim was later withdrawn by plaintiff. After motions to dismiss were overruled, APCo answered with a general denial, together with the defense of a legal right to cut timber because of an easement and order of condemnation. APCo also cross-claimed against Asplundh under an indemnity contract between Asplundh and APCo; this cross-claim was later withdrawn. Asplundh answered with a general denial and with assertion of a legal right to cut the trees within APCo's right-of-way. The case arose out of the following facts:
Plaintiff James Bonner lives in Camden, Wilcox County, Alabama. He is the owner of real property in Section 30, Township 12 North, Range 8 East, which he has owned since 1973. In February 1981, Mr. Bonner received a letter, certified mail, return receipt requested, dated February 18, 1981, from APCo advising him that a clearing contractor was about to cut danger timber *829 adjacent to Alabama Power's right-of-way that crossed Mr. Bonner's property, described as follows:
"PROPERTY DESCRIPTION

"Section(s) 29, 30, 32
"Township 12-N
"Range 8-E"

A danger tree is described in the record as timber outside the right-of-way that may injure or endanger the transmission line. APCo's easement across Mr. Bonner's land is 50 feet wide, 25 feet on each side of the transmission line.
The letter further stated, "We are notifying all property owners along this transmission line so that they may salvage any timber which will be cut on their property," and stated that "[t]he contractor has been requested to do this work with as little inconvenience to you as possible."
Mr. Bonner was the only individual designated to receive his letter by certified mail, return receipt requested. Letters had been written to others who owned property in Wilcox County in the same section, township, and range, approximately five weeks earlier, on January 15, 1981.
Mr. Bonner replied to the February 18, 1981, letter on February 20, 1981, referring to "Right-of-Way. Sec. 29, 30, 32-T12N, R8E", and stating:
"Dear Mr. Danner:
"Thank you for your letter dated 18 February 1981.
"Because of much damage done to my pasture, hayfield, fence, metal gate, etc., by your contractor (Asplundh) two or three years ago and the refusal of your Alabama Power Company official from Montgomery and your contractor, both who inspected this damage, to leave my pasture, hayfield, fence, and metal gate in the same repair they found my propertyI hereby:
"1. Trespass the Alabama Power Company and its contractor or contractors from `committing trespass' on my property.
"2. I request you have your Graduate Forester paint the right-of-way that crosses my property and mark any danger trees with paint on the tree and stump and personally supervise any cutting that crosses my property.
"3. Replace any fence you damage under the power line and restore any damage done to my real property.
"4. I will hold Alabama Power Company liable for any damage done to my personal or real property under the power line.
"You have waited until wet weather to ask to cross my property. That won't work.
 "Yours very truly,
 "/s/ James Bonner
"cc: Donald L. Manning
 "Camden, Al."
Several weeks later, by letter dated March 11, 1981, John E. Danner replied to Bonner, again referring to the right-of-way as being in Sections 29, 30, 32, Township 12 North, Range 8 East, and stating:
"In response to your request, in your letter of February 20, 1981, to mark danger trees to be cut on your property, we have had such trees marked with yellow paint. The following is a list of trees so marked:

 "6 inch D.B.H. Pine - 2
 "8 inch D.B.H. pine - 3
 "10 inch D.B.H. pine - 2
 "12 inch D.B.H. pine - 1
 _
 "TOTAL Number of Trees to be 8
 Cut

"We will have our representative present when the trees are cut. He will make every effort to notify you when the cutting is done so that you may be present. All work will be done with the utmost care so that your property will not be damaged.
"After the trees have been cut, if you have any questions or problems, please contact this office."
Mr. Danner testified that he wrote that letter, intending for Mr. Bonner to rely upon its contents. Mr. Bonner wanted to be notified so he could have his forester present to see that the trees were cut properly.
*830 Mr. Bonner testified that no one from Alabama Power Company or from Asplundh Tree Expert Company contacted him prior to the cutting of the trees on the Bonner land. He first learned that trees had been cut when Billy Malone, an owner of land adjoining the Bonner land, told him.
Upon receiving notice of the cutting, about two or three weeks afterwards, Mr. Bonner went to his land and found that not just eight "danger trees" adjoining the 50-foot right-of-way had been cut, as he had been advised, but instead a 200-foot right-of-way had been "clear cut" across his property, six miles away from the property on which the eight trees had been marked. There was no selective cutting, but clear cutting approximately 200 feet wide through a 20-to 25-year-old pine plantation.
Mr. Bonner, upon discovering the extent of the cutting on his land, protested to the Alabama Power Company about the cutting of his pine plantation and the cutting of the other trees that were not danger trees. He received a responsive letter from Gary Clayton, claims agent for Alabama Power Company, dated March 31, 1981, which denied that the trees had been cut by Alabama Power Company and advised him that Alabama Power Company was not liable for the excessive cutting.
Trial ensued. At the conclusion of plaintiff's evidence, and at the close of all the evidence, defendants filed a motion for a directed verdict, which was overruled. Following entry of the judgment, the defendants moved for JNOV or a new trial, and after a hearing, the trial court denied the motion; hence, this appeal.
The record establishes without contradiction that over 200 trees were cut on Mr. Bonner's land and that he was informed that only eight trees would be cut. No explanation was offered for this discrepancy other than that the references in each letter from APCo to land in Township 12 were typographical errors and should have been to Township 11. Eight trees had been marked in Township 11, but never cut. Mr. Bonner owns an interest in land in Township 11, as well as land in Township 12. It was also undisputed that many of the trees cut were not danger trees and that, contrary to the assurances made to Mr. Bonner by APCo, he was not informed before the cutting took place.
After the hearing held on the defendants' motion for new trial, the trial judge entered an order denying the motion and made the following observations, which are of record:
"THE COURT: Well, thank you, but I'll give you a ruling now. Now, there's no such thing as a pleasant lawsuit. But you folks are mighty professional people and you conducted yourself professionally and well all the way through the course of this trial. But looking at the conduct of the parties from the very inception of this controversy all the way through the trial and up until the conclusion of the trial it's hard for me to imagine a casewell, I shouldn't say that because that's going a little too far. But I will say that the conduct of the parties in this case was such all the way through that in my opinion, in my judgment justified the jury returning the verdict that was returned in the case. It's hard for me to imagine an individual that could have been more careful in protecting his position the first time he had any notice of any action on the part of the defendant than the plaintiff did in this case. And it's hard for me to imagine the defendants doing anything more than what they did to be more oppressive in their conduct.
"And I'll say this. The conduct of the parties defendant in the case from the beginning of the trial even up until the present time has been joint in nature. There's been nothing from the position from the beginning up until the present time, even the positions are being argued here by only one lawyer who has filed the motion jointly for all of the defendants. So there hasn't been any question from the beginning up to the present time that there's no distinction; there is no conflict so far as the relative relationships of the defendants are concerned.

*831 "But I observed the witnesses; I observed the people that testified in the case for the defendants, for the principal defendant Power Company; and there's no question in my mind but there was never any thought of any typographical error at any time and that any suggestion was nothing but a sham. The jury didn't believe it. The jury didn't believe the witnesses when they testified. I didn't believe them and I don't believe them now.
"I'll tell you one thing, and I don't have to tell you all this. If there is anything in the world that will get a person in trouble what will surely get you in trouble with the jury is getting up here and not telling the truth. And the jury didn't believe the witnesses told the truth. I think one man came up here and said we made a mistake; we did the wrong thing. And he was very forthright. But aside from that one witness I think every other witness that testified tried to carry on and perpetrate a sham and the jury saw through it and the jury didn't like it and they expressed their feeling in their verdict.
"Now, there's nobody in the world that feels stronger about our jury system than I do; and under the circumstances that I have before me I don't see anything that justifies disturbing the jury verdict in this case. And you all tried the case well and I think the jury heard the evidence and returned a verdict that they thought should be returned. And the case might come back and if it does it will be on error that I have made; and the only thing I can say in that regard is I did the best I could.
"But I won't disturb this jury verdict. And in fact if the jury had awarded an amount for the entire amount sued for I wouldn't have disturbed that either. And that'll be the order."
We are asked to reverse the trial court's order denying a new trial. We affirm.
The defendants first argue that the trial court erred in overruling their objection to a question asked by the plaintiff's lawyer of prospective jurors.
During the voir dire examination of the venire, the trial court inquired whether any of the panel was an "officer, stockholder, agent, servant or employee of Travelers Insurance Company" or had "any financial interest whatsoever, directly or indirectly, in that particular company, Travelers Insurance Company." No responses were made. Had any juror responded affirmatively, he might have been disqualified or subject to challenge for cause under § 12-16-150(12), Code 1975. Thereupon, counsel for plaintiff made the following inquiry:
"I would like to ask the jury panel, you have been qualified on certain things; but further is there any member of your family that works as an insurance adjuster for any company handling adjustments, claims or sells insurance or works as a secretary or salesman for any insurance company?"
This question was objected to, and the objection was overruled.
The controlling statute, insofar as the question asked by the plaintiffs' counsel, was Title 30, § 52, Ala.Code 1940. This statute first appeared as § 8662 of the 1923 Code. It provided:
"In civil and criminal cases, either party shall have the right to examine jurors as to their qualifications, interest, or bias that would affect the trial of the case, and shall have the right, under the direction of the court, to examine said jurors as to any matter that might tend to affect their verdict."
This section conferred "two `rights' of examination: (1) as to qualifications, interest or bias affecting the trial; and (2), under the court's direction, as to any matter which might affect the verdict." Cates, J., writing for the Court of Appeals in Ward v. State, 44 Ala.App. 229, 238, 206 So.2d 897, 906 (1966).
This statute has consistently been given a liberal interpretation, allowing a trial lawyer a broad right to question prospective jurors as to any matter which *832 might aid him in the intelligent exercise of his right to peremptory challenges. Dyer v. State, 241 Ala. 679, 4 So.2d 311 (1941). The examination is not confined to matters which disqualify a juror, but extends to any matter which might tend to affect the verdict. Avery Freight Lines v. Stewart, 258 Ala. 524, 63 So.2d 895 (1953). The scope of the examination is left largely to the discretion of the trial judge.
In Brown v. State, 45 Ala.App. 391, 396, 231 So.2d 167, 172 (1970), the Court observed: "As a practical matter, § 52, supra, admits of so many avenues of questioning that a trial judge seldom, if ever, can be held to reversible error thereunder." We might not go as far as to say that ourselves, but it is true that very wide latitude has been allowed in voir dire examination.
In urging trial lawyers to take advantage of their right to a probing, wide-ranging voir dire examination, Francis Hare, Jr., has stated the purposes of such an examination:
"To acquaint the jury generally with the type of case you have, and to form the basis for judgments by which you will be governed in eliminating persons who are for any reason biased or prejudiced against your client's position in the particular case at bar or stated conversely, to select a jury consisting of persons most favorably disposed to your client's position."
Hare, "Voir Dire and Jury Selection," 29 Ala. Lawyer 160 (1968).
In Vickers v. Howard, 281 Ala. 691, 208 So.2d 72 (1968), the plaintiff in a personal injury case appealed from a judgment in favor of the defendants. She claimed error in that
"The Foreman of the jury, Jerry W. Reynolds, was a licensed agent of Hardware Mutual Casualty Company which he concealed upon identification of the jury, thereby depriving Plaintiff's attorney of the opportunity of intelligently exercising his peremptory right of striking said juror from said jury panel."
The specific question asked the venire in that case was not recorded, but the plaintiff's counsel by affidavit said that juror Reynolds had identified himself as a Sentry Insurance representative. The lawyer said he later learned, after the trial, that Reynolds was primarily engaged in the business of fire and casualty insurance, and had he known that, he would have struck him. Plaintiff also produced an affidavit by Attorney Waldrop Windham, who stated it was the prevailing practice, almost without exception, in striking juries in Birmingham to refuse to accept as jurors any person who sells or adjusts casualty insurance of any kind.
None of the companies of the Sentry Insurance group were insurers of the defendants in that suit, or had any interest in the suit.
In Vickers, Justice Merrill first quoted Title 30, § 52, Code 1940, and then said:
"We have held that this section has the manifest purpose of the disclosure by every juror as to all material qualifications in order that the parties may exercise advisedly their peremptory challenges. Hayes v. Boykin, 271 Ala. 588, 126 So.2d 91, and cases there cited.
"...
"A party in either a civil or criminal case has the right to examine jurors as to bias, interest or qualifications....
"We think counsel for plaintiff waived any claim of prejudicial error when no follow up questions were asked when he was informed that the juror was a Sentry Insurance representative."
281 Ala. at 693, 208 So.2d at 74.
It is clear from the Vickers decision that there is no abuse of a trial court's discretion in allowing lawyers to inquire whether any member of the venire or members of their families work for or adjust claims for any insurance company. Such information is clearly material to their right to exercise their peremptory strikes, whether or not it falls short of producing information which would disqualify the juror.
*833 Rule 47, A.R.Civ.P., in no way limits voir dire examination. Instead, it retains the practice in existence before its adoption of allowing lawyers to put supplementary questions to the venire, if the court has conducted the initial examination. In this respect, it differs from its federal counterpart.
In Griffin v. State, 383 So.2d 873 (Ala.Crim.App.1980), the Court of Criminal Appeals recognized, as we do, that Title 30, § 52, Ala.Code 1940, was not carried forward for inclusion in Ala.Code 1975. Section 1-1-10, Ala.Code 1975. In Griffin, the court stated:
"It seems that Ala.Code 1975 does not have a counterpart to Code of Alabama, Recompiled 1958, Tit. 30, § 52. The language thereof is to be found, with some modification as noted, in Rule 47, Alabama Rules of Civil Procedure:
"...
"Notwithstanding any apparent hiatus, there can be little doubt as to the law that has prevailed for many years in Alabama to the effect that in the process of selecting the jury from the venire afforded, each party has the right to have questions formulated by it propounded to the jury, either by the court or by the party as the court may determine, if such questions reasonably relate under the circumstances to the question of the qualification or interest or bias on the part of prospective jurors."
We agree.
It is true that on some occasions, this Court has held that the repeated reference to liability insurance during the course of the trial itself required a new trial. Gwin v. Church, 272 Ala. 674, 133 So.2d 880 (1961). In Gwin, there were at least eight times when insurance was mentioned, apparently, as this Court noted in American Pamcor, Inc. v. Evans, 288 Ala. 416, 261 So.2d 739 (1972), without any reason being shown for making the inquiry, either to determine the qualifications of jurors or to inform the plaintiff of possible bias so that the plaintiff could intelligently exercise his right to strike. The Court refused to reverse the trial court in American Pamcor for denying the defendant's motion for new trial. This Court, speaking through Justice Maddox, said:
"The number of instances when insurance is injected in a case is not the sole yardstick by which prejudice to the defendant is measured. However, the question in each case is whether counsel has overstepped that almost imaginary line between what is allowable and what is not. In Gwin, it was easy to see the prejudicial effect. In a case like this, it is difficult to determine whether counsel got past the line of propriety. The trial court initially denied the motion for a mistrial and later denied the motion for a new trial. We find no prejudicial error in his rulings in this case."
288 Ala. at 419-420, 261 So.2d at 742.
We hold that the trial court correctly overruled the objection to the plaintiff's question on voir dire.
The defendants next argue that prejudicial error occurred, requiring a new trial, because the trial court allowed into evidence a "public trespass notice" which Mr. Bonner had run in the local newspaper and had posted on his land in 1980. They argue in their brief that the evidence was not relevant to the issues in the case. First, we do not necessarily agree that the notice was not relevant to the issues. There was evidence that Bonner and APCo had a long-standing disagreement about damage to his lands by APCo and its contractors. That is manifest by his efforts to prevent it in the events culminating in this lawsuit. However, be that as it may, no ground for the objection was stated at the trial, and we cannot reverse the trial court for overruling a general objection. Cities Service Oil Co. v. Griffin, 357 So.2d 333 (Ala.1978).
Finally, the defendants contend that the trial court must be reversed for refusing to grant a new trial because, they argue, there was no evidence to support any award of punitive damages. They argue that this is so because the plaintiff failed to *834 prove any compensatory or actual damages. Apparently, the basis of this argument is that the plaintiff did not prove the actual dollar value of the trees cut on his land. He did prove, and it was not contradicted, that several hundred merchantable trees were destroyed. A 200-foot swath through a pine plantation planted for timber, between 20 and 25 years old, was destroyed. Scores of merchantable hardwood trees were likewise destroyed. He was not informed that they had been cut in sufficient time to salvage them.
There was evidence from which the jury could have concluded that APCo or Asplundh intentionally told Bonner eight trees would be cut, knowing that it was not true, when it was the intention to cut on a different tract of land altogether. Why either would deliberately mislead him, we cannot say, but whether they did or not was clearly a jury question and, having resolved that question against the defendants, the jury was more than justified in awarding punitive damages, and the trial court cannot be said to have abused its discretion in upholding the verdict. Jim Walter Homes, Inc. v. Waldrop, 448 So.2d 301 (Ala.1983).
We have carefully considered all of the contentions of the defendants and conclude that the trial court did not err to reversal. Thus, its judgment is affirmed.
AFFIRMED.
FAULKNER, JONES, ALMON, EMBRY, and ADAMS, JJ., concur.
TORBERT, C.J., and MADDOX and BEATTY, JJ., dissent.
BEATTY, Justice (dissenting):
Because the majority opinion effectively changes the long-established principle concerning the injection of insurance into a civil case, for no reason presented to the Court other than the opinion of counsel, I must respectfully dissent.
It should be noted first that this is not a case in which a witness has revealed insurance, nor is it a case in which reference has been made to insurance in closing argument. It is a case in which additional reference to insurance has been allowed during juror qualification. That process used in this case bears repeating.
During the voir dire examination of the venire, the trial court inquired whether any of the panel was an "officer, stockholder, agent, servant or employee of Travelers Insurance Company." No responses were made. Later, during voir dire, counsel for plaintiff was allowed to make the following inquiry:
"I would like to ask the jury panel, you have been qualified on certain things; but further is there any member of your family that works as an insurance adjuster for any company handling adjustments, claims or sells insurance or works as a secretary or salesman for any insurance company?" (Emphasis added.)
This question was asked over defense counsel's objection that it was "not a proper qualification."
This is not a case in which an insurance company was a party. Here, the insurance company's relevance to the case was only that, in the event of a recovery for the plaintiff, it would pay the money judgment. In such circumstances, i.e., where the insurance carrier is involved only because it will pay a judgment against its defendant-insured, Alabama has long adhered to the principle indicated by the question asked in this case by the trial court: whether any member of the panel was an officer, stockholder, agent, servant or employee of "X Insurance Company." That has been the extent of any reference to insurance in qualifying the venire. Vredenburgh Saw Mill Co. v. Black, 251 Ala. 302, 37 So.2d 212 (1948). Unlike Alabama, some states have allowed the venire to be asked that question without reference to a particular insurance company, e.g., interest in "any" insurance company. Annot. 4 A.L.R.2d 761, 811. The majority's opinion goes further than either of those views. It not only allows inquiry into interest in any insurance company generally, but asks whether *835 family members work for any insurance company.
The majority justifies this action by relying on a statute which has been repealed, see Code of 1975, § 1-1-10, and finding the question of plaintiff's counsel to be an inquiry into a matter that might affect the verdict, which the trial court, in its discretion, may permit. Although Title 30, § 52, Code of 1940, has been superseded by Rule 47, A.R.Civ.P., which provides that "[t]he court may permit the parties or their attorneys to conduct the examination of prospective jurors or may itself conduct the examination," the long-standing rule in this state concerning the introduction of insurance in qualifying the venire was set forth by this Court in Gwin v. Church, 272 Ala. 674, 680, 133 So.2d 880 (1961):
"The rule is firmly settled in this state that the plaintiff is entitled, upon his seasonable and proper motion, to have the jury qualified as to their relation to, or interest in, any insurance company which would be liable, in whole or in part, for any judgment that might be rendered against the defendant. [Citations omitted.] On the other hand, counsel should be careful to avoid saying or doing anything which would lead the jury to believe that his opponent has insurance to protect him in respect to the matter in controversy when reference to insurance is not admissible for any proper purpose ...."
Until now any "proper purpose" of showing bias or interest in a member of the venire for an insurance company has been limited to an application of the principle stated in the first sentence of the above quotation.
Of the five cases cited by the majority as authority to depart from this well-settled rule, three are criminal cases in which insurance is not involved and which, therefore, have no bearing on the present case. Avery Freight Lines, Inc. v. Stewart, 258 Ala. 524, 63 So.2d 895 (1953), involved not only an inquiry into whether any member of the venire was a stockholder or employee of the defendant's liability insurance carrier, but also an inquiry "for information of counsel only" as to whether "any of you [members of the venire] have any relatives who work for that concern." 258 Ala. at 526, 63 So.2d at 895-96. There was, however, no proper objection to the question propounded by the trial judge; consequently, any issue concerning the inquiry was not preserved for review. Notwithstanding this, this Court stated, in what amounts to dicta, that "[t]he inquiry is conceded to be one available to plaintiff's counsel under section 52, Title 30 of the Code." 258 Ala. at 526, 63 So.2d at 896. However, it was recognized that the inquiry was limited to the defendant's insurance carrier: "The inquiry of the panel by the judge as to their relation to or interest in the insurance carrier of the defendant was proper unless attended by undue prejudicial circumstances." (Emphasis added.) Id. Even if this case can be construed as permitting an inquiry into relatives' connections with an insurance company, it clearly limits the inquiry to the defendant's insurance company.
Even the last case cited, Vickers v. Howard, 281 Ala. 691, 208 So.2d 72 (1968), does not support the majority's position. That case obviously concerned an inquiry into the occupation of the prospective jurors only, not any and all of their relatives. One member of the venire, Jerry Reynolds, "replied in open court that he was a Sentry Insurance agent." 281 Ala. at 693, 208 So.2d at 74. This Court held only that "[w]hen the juror answered that he was an insurance representative, plaintiff's attorney could have inquired further if he desired to strike casualty insurance salesmen or adjusters." Id. A further inquiry into Reynolds's duties or responsibilities to determine possible bias, however, is vastly different from allowing a blanket inquiry as to whether any of the venire members have any relatives who work in any capacity for any insurance company. Such an inquiry has never before today been permitted in this state.
Although I dissent to that practice here, as unsupported by any authority, nevertheless, *836 I have no intellectual animosity toward such a far-reaching change should there have been any justification advanced for it. But, here we have been presented with nothing on which to base this reversal of the long-adhered-to principle except the argument in brief of plaintiff's distinguished counsel. He argues in his brief that the insurance industry is large; that every town has numerous sales agents; that many people depend directly upon the insurance industry, and, therefore, that some persons who had been qualified as to defendant's particular carrier might have been biased in favor of any insurance company.
The majority's approval of the additional inquiry under the speculation, unsupported by any facts and without reference to any contravening interests, inevitably leads to a result akin to this paraphrase:
"Ladies and gentlemen of the jury panel, you have been asked whether you are an officer, stockholder, agent, servant or employee of the Travelers Insurance Company, or whether you have any financial interest in that insurance company. You have said `no' to that question. Now to reemphasize the importance of insurance in this case, does any member of your family work as an insurance adjuster, or handle claims, or sell insurance, or work as a secretary or otherwise, for any insurance company?"

For these reasons, I must respectfully dissent.
TORBERT, C.J., and MADDOX, J., concur.